**UNITED STATES v. ALPER.**

No. 257.

Circuit Court of Appeals, Second Circuit.

June 20, 1946.

Louis Kaye, of New York City (Abraham J. Gellinoff, of New York City, of counsel), for appellant.

John F. X. McGohey, U. S. Atty., of New York City (Harold J. McAuley, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before L. HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

Upon a jury trial the appellant was convicted under an indictment based on section 29, sub. b(1) of the Bankruptcy Act, 11 U.S.C.A. § 52, sub. b(1), which makes it a criminal offense for any person to have "knowingly and fraudulently (1) concealed from the receiver, custodian, trustee, marshal, or other officer of the court charged with the control or custody of property, or from creditors in any proceeding under this title, any property belonging to the estate of a bankrupt." The indictment alleged that an involuntary petition in bankruptcy was filed against Sol Chernow on October 22, 1940, he was adjudicated bankrupt on November 7, 1940, a trustee of his estate was elected on December 12, 1940 and thereafter qualified as such, and that from October 22, 1940 up to the date of filing the indictment (November 9, 1944) the defendant "did unlawfully, wilfully, knowingly and fraudulently conceal from the said trustee" 140 cases of distilled spirits having a value of approximately $2800 and belonging to the estate in bankruptcy of said Chernow. The appeal questions the sufficiency of the evidence, the adequacy of the charge to the jury, and the propriety of several rulings on evidence.

The appellant's first contention is based on the claim that the evidence was insufficient to establish the crime charged and consequently the court erred in denying a motion for a directed verdict of acquittal. This contention is not supportable. The bankrupt, who had pleaded guilty to a similar charge, was a witness for the prosecution. He testified that he purchased from one Huggins a bar and grill known as "The Red Arrow" and to finance the trans-

action borrowed $1,000 from the appellant, agreeing to repay it, with $250 interest, by a series of $25 checks payable weekly, and turning over as security a certificate for 50 shares of stock in a corporation which owned a bar in Manhattan. In April 1940 the appellant also acquired from Huggins $250 of notes made by the bankrupt, whose total indebtedness to the appellant thus became $1,500. After paying some of the checks Chernow became in default and in August 1940 told the appellant that he could not pay. Thereupon the appellant suggested that Chernow go into bankruptcy "and take plenty of liquor. I will take it away from you. Whatever will be the difference, I will pay it to you." At that time according to Chernow's testimony his debt to the appellant was $860 or more. During September and early October Chernow purchased on credit 228 cases of liquor of a value of about $20 a case. After its delivery at "The Red Arrow" he proceeded to secrete it. He testified that he delivered to the appellant or his nominees a total of 140 cases and that on October 10th the appellant returned the stock certificate he had held as security for the debt. Having so disposed of the liquor Chernow made an assignment for the benefit of creditors, which was followed by the involuntary petition of October 22, 1940 and the adjudication of November 7th. In his schedules the bankrupt did not list the appellant as a creditor; nor did the appellant file any claim. This was not due to lack of knowledge of the bankruptcy; in a conversation with agent Colby of the Federal Bureau of Investigation in 1943, the appellant stated that Chernow was still indebted to him and that he had refrained from filing a claim in the bankruptcy because he believed Chernow would pay him in the future after getting back into business.

■ The appellant's argument as to insufficiency of the evidence rests chiefly on the point that the prosecution failed to prove that he knew that a trustee had been appointed; hence he could not be guilty of knowingly concealing from the trustee assets of the estate. Particular reliance is placed on United States v. Yasser, 3 Cir.,

114 F.2d 558, 560, where the court said: "It must, therefore, appear that the defendant had actual knowledge of the existence of a receiver or trustee in bankruptcy or that he wilfully closed his eyes to facts which made the existence of such an officer obvious." In the case at bar not only did the accused know of the bankruptcy, but himself suggested it, telling Chernow that after he (Alper) had been satisfied out of the liquor the bankrupt was to purchase, he would turn back the rest. This clearly justified the inference that he expected the bankrupt to keep it from his trustee, if one should be appointed, and in any event from his creditors. See United States v. Weinbren, 2 Cir., 121 F.2d 826, 828. The secretive way in which the purchased liquor was placed about in various caches was unanswerable proof that it was to be kept from the bankrupt estate. The bankrupt was plainly guilty of a fraudulent concealment and the evidence, if believed, was ample to sustain the defendant's conviction as a principal for aiding and abetting the bankrupt, 18 U.S.C.A. § 550, with respect to such part of the 140 cases as were not required to pay the debt to Alper, had the case been submitted to the jury on that theory.

■ The appellant's complaint as to the charge is well taken. On the bankrupt's own story part of the liquor turned over to the appellant was to pay the bankrupt's debt. To this extent the transfer was a preference, not a concealment of assets. See Levinson v. United States, 6 Cir., 47 F.2d 451. The court was requested to charge on this subject but refused to do so. The fifth request read as follows: "If the defendant received property in payment of a debt due from the bankrupt, it may have been a preference but not a concealment within the scope of the present indictment."

This was an accurate statement of the law and it, or some equivalent charge, should have been given to the jury. It is true that 140 cases of liquor at $20 a case amounted to much more than the bankrupt owed the appellant, but the jury might not have believed the liquor worth

$2800. While it seems unlikely that they would have found that the accused took only enough to satisfy the debt, we cannot say that the failure to enlighten the jury as to the difference between preference and concealment was harmless error. Cf. Bollenbach v. United States, 66 S.Ct. 402. Particularly is this true because the court began its charge with the statement that the Government contended that Alper caused Chernow to turn over to him 140 cases of liquor in payment of Chernow's indebtedness to him before Chernow's bankruptcy, and "continued to fraudulently conceal this from the trustee after Chernow's bankruptcy." This was neither the charge of the indictment, nor did it accurately state the prosecution's position, which was that Alper was to keep enough liquor to pay his debt and turn back the rest to the bankrupt. Nothing later in the charge clarified the issue for the jury or explained to them that only if the appellant kept liquor in excess of what was required to pay his debt could he be found guilty of a concealment. For this error in the charge the conviction must be reversed and the cause remanded for a new trial.

■ Objection is also made to the charge with respect to accomplices. The court charged that an accomplice's testimony must be scrutinized with great care but need not be corroborated. The correctness of this is not disputed but the appellant contends that it was error to refuse to add that the bankrupt and a witness named Kaplan were accomplices. But since the court need not have given any charge at all on the subject, Newman v. United States, 9 Cir., 28 F.2d 681, certiorari denied Boyd v. United States, 279 U.S. 839, 49 S.Ct. 253, 73 L.Ed. 986, we fail to see how failure to point out the accomplices can be deemed prejudicial error.

■ The appellant complains of several rulings on evidence. The same questions may not arise on another trial. However, we deal with them briefly. The first relates to evidence that one Klinger brought whiskey to a bar owned by the appellant where it was surreptitiously poured into empty bottles of other brands and the original bottles were destroyed. The evidence would support an inference that the whiskey in question was part of that received by the accused from the bankrupt. Hence it was clearly admissible, even though it showed complicity in a criminal misbranding. The second ruling relates to evidence of a substitution of names upon the back of the stock certificate which the accused held as security for the bankrupt's indebtedness. According to the bankrupt's testimony this certificate was surrendered in exchange for the liquor; therefore the evidence was relevant and competent. The third ruling concerns the testimony of agent Colby as to the reason given by the bankrupt for testifying falsely before the referee, namely, that he had been advised to testify the way he did in order to hide the concealment. It would seem a fair inference that this advice came from the accused who was the only person having any reason so to advise him. While Chernow could have testified as to what the accused said to him, permitting Colby to testify that Chernow said that Alper gave him such advice was admitting in evidence incompetent hearsay. The fourth ruling relates to the admission of a letter written by the accused's brother-in-law, a witness for the defense, in which he said that "It's a good thing I forgot so much," when interviewed by an F. B. I. agent in Honolulu. This letter was shown to the witness on cross-examination, after he had been asked whether he did not write to the accused the substance of what the letter contained and had replied that he did not remember. While showing him the letter apparently did not refresh his recollection, he did acknowledge writing it. He had testified on direct examination that he had not received liquor from the bankrupt. The contents of the letter tended to show bias on his part and therefore affected his credibility. Admission of the letter may be supported on this ground. Mr. Padgug's letter, exhibit 16, was properly admitted since the witness had denied on his direct examination that he had ever been an attorney for the bankrupt or interceded on his behalf with reference to a contempt order.

The final point is the court's refusal to read Chernow's testimony before the grand jury to ascertain whether it was contradictory of his testimony at the trial. Upon cross-examination Chernow was asked if he had testified before the grand jury and had there told the truth. He replied in the affirmative. Thereupon the accused's counsel requested the court to examine the grand jury testimony to see whether there were inconsistencies between it and Chernow's trial testimony. The minutes of his testimony before the grand jury had never been written up and so far as appears the prosecution made no use of such testimony before or at the trial. The trial judge first ruled that it was incumbent upon him to make the requested examination and accordingly he directed the United States Attorney to procure during recess the grand jury minutes of Chernow's testimony. However, when the trial was resumed after recess, the judge reversed his ruling and instructed the United States Attorney not to order the minutes. This is assigned as error.

■■■ After an indictment has been found and the accused apprehended, the veil of secrecy surrounding grand jury proceedings may safely be lifted where justice so requires. Metzler v. United States, 9 Cir., 64 F.2d 203, 206; United States v. Amazon Industrial Chem. Co., D.C.Md., 55 F.2d 254, 261; United States v. Perlman, D.C.S.D., N.Y., 247 F. 158, 160; Atwell v. United States, 4 Cir., 162 F. 97, 17 L.R.A.,N.S., 1049, 15 Ann.Cas. 253. Rule 6(e) of the New Federal Rules of Criminal Procedure also recognizes, at least by implication, that the court has power "in connection with a criminal proceeding" to compel disclosure of matters occurring before the grand jury. Whether the power should be exercised lies, like other matters pertaining to the conduct of a trial, within the court's discretion. In the case at bar it is unnecessary to determine whether there was an abuse of discretion in declining to have the minutes written up, since the case must be reversed for error in the instructions already discussed. But as the same question may arise on the new trial it seems desirable to refer to some of the matters which the judge should take into account in exercising his discretion. These will include the timeliness of the request for the minutes, the delay in the trial which may result, and the extent of the burden which will be imposed upon the judge by a comparison of the witness's grand jury testimony with his trial testimony. If the witness's grand jury testimony is very lengthy, it would be an intolerable burden and would unduly delay the trial to require the judge to go through it on the mere chance that some inconsistency favorable to the accused might be found. The trial of an indictment is of course an inquiry into the truth of the charge; but in such trial the judge must be as little an advocate of the accused as of the prosecution. When the testimony before the grand jury is in small enough compass to make any contradictions between it and the witness's trial testimony readily discoverable it is a tolerable duty to impose upon the judge an examination of the minutes. But to demand that he peruse many pages of an examination of a witness to discover possible contradictions is altogether to falsify his position; for then he becomes in effect an active assistant of the defense. He would have to bear in mind all that the witness had sworn to, and pick out from a mass of what may be, and usually is, verbiage any parts that may be contradictory. That involves an active participation favorable to one side, which should not be required. A great part of the law of evidence is based upon the practical difficulties that would incidentally arise from the admission of what, strictly speaking, is logically relevant; it is founded upon the recognition that here, as elsewhere in the law, we are seeking not logical perfection but the just settlement of a controversy. The duty we are discussing is preeminently in this class and it is particularly one about which it would be unsafe to generalize.

Because of the inadequacy of the charge, the judgment is reversed and the cause remanded for a new trial.