**UNITED STATES of America,**
**Appellee,**

v.

**H.J.K. THEATRE CORPORATION,**
**Jeanne Ansell and Irving A. Rosenblum, Appellants.**

**UNITED STATES of America,**
**Appellee,**

v.

Jeanne ANSELL, Irving A. Rosenblum, H.J.K. Theatre Corporation, K.B. Theatre Corporation, K.L. Theatre Corporation, Ansell Theatre Corporation, X.K. Theatre Corporation, M.A.K. Theatre Corporation, T & J Theatre Corporation, K.A.S. Theatre Corporation, J.A. Theatre Corporation, Appellants.

No. 392, Docket 24001.

United States Court of Appeals Second Circuit.

Argued June 8, 1956.

Decided Aug. 20, 1956.

As Amended on Denial of Rehearing Oct. 15, 1956.

Paul W. Williams, U. S. Atty., for the Southern Dist. of N. Y., New York City (Dennis C. Mahoney, Asst. U. S. Atty., New York City, of counsel), for the United States of America.

Block & Block, New York City (Frederick H. Block and Robert B. Block, New York City, of counsel), for appellant Rosenblum.

Bernard Austin, New York City (Isadore B. Hurwitz, Cleveland, Ohio, of counsel), for appellant Ansell and corporate appellants.

Before FRANK, HINCKS and WATERMAN, Circuit Judges.

FRANK, Circuit Judge.

Nine indictments and one information were consolidated for trial, and are consolidated for this appeal. In each of the first eight indictments, Jeanne Ansell, Irving Rosenblum and one of the several corporate defendants were charged in numerous counts with wilfully attempting to defeat and evade the payment of admissions taxes due the United States during the period May 1946 through March 1949 by filing false and fraudulent returns in violation of 26 U.S.C. § 1718 (b).[1] The ninth indictment charged Ansell and the J.A. Theatre Corporation with wilfully failing to account and pay over admissions taxes due the United States, in violation of 26 U.S.C. § 1718 (b). Both offenses charged under Section 1718(b) are felonies. The sole information charged Ansell and the J.A. Theatre Corporation with wilfully failing to file an admission tax return in violation of 26 U.S.C. § 1718(a),[2] a misdemeanor.

1. Section 1718(b): "Any person required under this chapter to collect, account for and pay over any tax imposed by this chapter who willfully fails to collect or truthfully account for and pay over such tax, and any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both, together with the costs of prosecution."

2. Section 1718(a): "Any person required under this chapter to pay any tax, or required by law or regulations made under authority thereof to make a return, keep any records, or supply any information, for the purposes of the computation, assessment, or collection of any tax imposed by this chapter, who willfully fails to pay such tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction

Defendant Ansell was the president and apparently the owner of the corporate defendants. Rosenblum was the corporations' accountant and, at various times, was the treasurer of many of them. The corporations owned the leases of several motion picture theatres in which foreign films were exhibited. Defendants concede that the monthly admissions tax returns were false. But, at the trial, Ansell and Rosenblum each sought to place the blame for the filing of the fraudulent returns on the other.

There was evidence from which the jury could reasonably find the following: Ansell owned and operated the chain of theatres whose leases were owned by the corporate defendants; daily work sheets showing the amounts of taxes due the Government were prepared; from these, monthly summaries were made up; both Ansell and Rosenblum attempted to conceal the existence of the monthly summaries from the Government agents; during part of the indictment period, the tax monies that were collected were deposited in a special bank account, but Ansell drew checks on this account for purposes other than the payment of taxes; Rosenblum had an interest in a corporation which had made loans to some of the corporate defendants; the tax returns were prepared by Rosenblum each month and signed by either him or Ansell; the J.A. Theatre Corporation never filed any return; all the filed returns substantially understated the total tax actually collected.

The jury found all the defendants guilty on all of the counts in which they were named. The trial judge fined each of the theatre corporations $500 on each count in which they were named, for a total of $106,000. The individual defendants, Ansell and Rosenblum, were each fined $100 for each count, for a total of $21,200 for Ansell and $21,000 for Rosenblum. In addition, Ansell was sentenced to a 2 year prison term on all the felony counts and to a 1 year term on each of the misdemeanor counts, sentence on all counts to run concurrently. Rosenblum received an 18 month concurrent prison sentence on each count. All the defendants appeal and present a variety of grounds for reversal.

1. All defendants raise two objections which we shall consider first.

(1) Defendants, relying on Berra v. United States, 351 U.S. 131, 76 S.Ct. 685, contend that we should remand for resentencing under 26 U.S.C. § 3616(a). They also suggest that the Berra case may require dismissal of the indictments. We reject defendants' contention for reasons stated in United States v. Moran, 2 Cir., 236 F.2d 361.

The writer of this opinion has some doubt about that reasoning. The question considered by the Supreme Court in Berra was confined to the rejected request for an instruction to the jury. The Court did not discuss Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L. Ed. 418 or United States v. Beacon Brass Co., 344 U.S. 43, 73 S.Ct. 77, 97 L.Ed. 61. If those cases were pertinent, it would seem that the Court would have affirmed, merely citing those cases. There is language in Berra which can be read as holding that the coverage of the two statutes is in all respects identical, and that the question as to which statute applied was not for the jury but solely for the judge when he came to sentencing. Berra can then perhaps be construed to mean that the judge improperly imposed the sentence for conviction of a felony. On that interpretation, we should, in the instant case, remand for resentencing under the misdemeanor statute. However, the writer is not sure enough about the above interpretation of Berra to justify his dissenting here.

■ (2) Defendants further contend that, even if they were properly indicted for felonies under Section 1718(b), yet the evidence was insufficient to prove a "wilful" violation under the rule of Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 368, 87 L.Ed. 418. In Spies, the de-

thereof, be fined not more than $10,000, or imprisoned for not more than one year,

or both, together with the costs of prosecution."

fendant was indicted under a subsection of the Internal Revenue Code, similar to Section 1718(b), which made it a felony to wilfully attempt, " 'in any manner' ", to evade or defeat any tax. Another subsection made it a misdemeanor to wilfully fail to pay a tax or fail to make a return. Defendant was indicted for wilfully attempting to evade the income tax by failing to file a return or to pay a tax. The Supreme Court held that mere proof of a knowing failure to file a return or to pay a tax, without proof of any affirmative act of evasion on the part of the taxpayer, was insufficient to establish "wilfulness" under the felony provision. We think the Spies case is distinguishhable from the case at bar for here there was evidence from which the jury could reasonably have found beyond a reasonable doubt not only the willful and knowing filing of false returns but also that both Rosenblum and Ansell had concealed the existence of the monthly summaries of the admission taxes from the Government. Also there was evidence from which the jury could reasonably have found beyond a reasonable doubt that both Rosenblum and Ansell had concealed the existence of the monthly summaries of the admissions taxes from the Government. Rosenblum lied to a Government agent concerning these summaries, telling the agent that they did not exist. Ansell failed to reveal their existence when questioned by a Government agent concerning the method by which she obtained the figures for making up the tax returns. She stated that she obtained the figures from the employees in her office. These monthly summaries were never turned over to the Government. Consequently, many hours were spent assembling the information which the defendants had in summary form.

2. Ansell raises several additional points which we think are without merit:

■ We think the trial judge did not "abuse" his discretion in refusing separate trials. Rules 8(b) and 13 of the Federal Rules of Criminal Procedure, 18 U.S.C.A.; United States v. Lebron, 2 Cir., 222 F.2d 531, 535.

■ Ansell alleges that certain corporate checks and other records were obtained illegally by the Government, and claims the trial judge erred in denying her motion to suppress. These records were voluntarily turned over to the Government by Rosenblum, a corporate officer. As to the corporate records, we think Rosenblum had apparent and actual authority to give them to the Government and that there was no unlawful seizure. Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277, 90 L.Ed. 1477; United States v. Wolrich, D.C., 119 F.Supp. 538. In any event, Ansell may not assert the constitutional rights of the corporations in her own behalf. Lagow v. United States, 2 Cir., 159 F.2d 245. As to Miss Ansell's personal checks, assuming *arguendo* that they were illegally obtained, we think their reception in evidence was harmless. Their use as evidence was indeed beneficial to her, since they tended to establish that she had spent personal funds for corporate purposes, thereby reimbursing the corporation for funds withdrawn by her.

■ The trial judge did not err in refusing Ansell's requested charge that the Government agents acting as witnesses were interested witnesses. The judge's charge on this point was adequate.

■■ The final issue raised by Ansell is that the trial judge erred in not further limiting her cross-examination and the summation to the jury by Block, Rosenblum's attorney. Block had been the attorney for both Ansell and Rosenblum at the time Ansell appeared before the Grand Jury. He was later discharged by her but continued as Rosenblum's lawyer. No objection was made to Block's thus serving as Rosenblum's lawyer until he sought to cross-examine Ansell concerning her appearance before the Grand Jury.

We assume, *arguendo,* that Ansell correctly argues as follows: Where, as here, an attorney had represented two persons who later become defendants in a criminal prosecution, he remains under an obligation not to reveal any confidential communications made to him by either of

these clients.[3] But even assuming that argument were correct, it would have no application here, for a careful examination of the record fails to reveal any such impropriety by Block. He based his cross-examination of Ansell on subpoenaed records, records obtained from the Government, a letter written to the Grand Jury, testimony of other witnesses at the trial which contradicted Ansell's testimony, and that part of Ansell's Grand Jury testimony which was made available to him by the trial judge.

Nor do we think Block's summation exceeded the bounds of proper advocacy. Although he attacked Ansell's credibility, nevertheless the testimony of the Government's witnesses, and Ansell's testimony on cross-examination by the Government and Block, amply justified his remarks. In addition, some of his remarks were in answer to questions, concerning his own character and integrity, raised by Ansell's testimony. He had a right so to reply. McCormick, Evidence (1954) page 194. If the jury was adversely affected by the fact that Ansell's former lawyer was critical of her, the fault was Ansell's, since Block's former representation of her was first brought out by her own lawyer at the trial, on his direct examination of Ansell.

█ 3. Rosenblum's only additional contention is that the trial judge erred in restricting his attorney's access to the Grand Jury testimony of Ansell and in limiting the use of the disclosed Grand Jury testimony in his cross-examination of Ansell. After the Government had used Miss Ansell's Grand Jury testimony to impeach her,[4] Rosenblum's counsel asked to see the remainder of Ansell's Grand Jury testimony in order to impeach her. We do not think that he was entitled to have access to all of her testimony. However, where, as here, it is shown or alleged that the trial testimony of a witness against the defendant is contradictory of the witness' testimony before a Grand Jury, the rule in this circuit is that the defendant must be permitted to use the contradictory Grand Jury testimony to impeach the witness. The proper procedure is for the trial judge to read the Grand Jury minutes to determine whether the witness' trial testimony is contradictory; if it is, the judge should disclose to defendant that part of the witness' Grand Jury testimony which contradicts the witness' trial testimony; and if not, and if the defendant so requests, the judge should seal the witness' complete Grand Jury testimony and make it part of the record on appeal.[5]

The trial judge in this case did not follow this procedure. Instead, he ruled that he would read into the record only that portion of Ansell's Grand Jury testimony which related to two matters on which the Government had cross-examined her, i. e., (1) her claim that she

---

3. See McCormick, Evidence (1954) pp. 192–193; 8 Wigmore, Evidence, Section 2312; Annotation 141 A.L.R. 562; Root v. Wright, 84 N.Y. 72, 76; People v. Abair, 102 Cal.App.2d 765, 228 P.2d 336; People v. Kor, 129 Cal.App.2d 436, 277 P.2d 94; State v. Archuleta, 29 N.M. 25, 217 P. 619, 621; cf. People v. Fernandez, 301 N.Y. 302, 336–343, 93 N.E.2d 859.

4. It is suggested that the Government, by using a portion of the Grand Jury minutes to impeach Ansell, waived its privilege to keep the balance secret. See United States v. Krulewitch, 2 Cir., 145 F.2d 76, 79, 156 A.L.R. 337; United States v. Beckman, 2 Cir., 155 F.2d 580, 584. We leave that question open.

5. United States v. Alper, 2 Cir., 156 F. 2d 222, 226; United States v. Lebron, 2 Cir., 222 F.2d 531, 536; United States v. Cohen, 2 Cir., 145 F.2d 82, 92; United States v. Krulewitch, 2 Cir., 145 F.2d 76, 78; United States v. De Normand, 2 Cir., 149 F.2d 622, 625–626; United States v. Beckman, 2 Cir., 155 F.2d 580, 583–584.

The Government contends that Remington v. United States, 2 Cir., 191 F.2d 246, 261 should be construed to hold that, before a defendant may even inspect a witness' contradictory Grand Jury testimony, he must lay a foundation similar to that required before he introduces into evidence prior inconsistent statements. This interpretation of Remington we think is not warranted. Since the Krulewitch case, supra, which the Court cited in Remington, held precisely the opposite, and since the Cohen case, supra, also cited by the Court, contains no in-

thought that the tax returns filed were only for part payment, and (2) the monthly tax summaries. However, the testimony actually read into the record also revealed (3) that Rosenblum had set up a separate tax account, and (4) that Ansell had given the tax figures to Rosenblum who made out the tax returns. In addition, Block had a copy of a prepared statement that Ansell had read to the Grand Jury.

The trial judge also ruled that he would limit Block's cross-examination of Ansell with respect to her Grand Jury testimony to only the two matters brought out by the Government in its cross (i. e., points (1) and (2) supra). He so ruled after Ansell's counsel objected to the cross-examination of his client by Block (who had represented her at the time of the Grand Jury hearing).

 We think that Rosenblum's attorney was entitled to have all of Ansell's contradictory Grand Jury testimony read into the record and that he was entitled to cross-examine her concerning this testimony free from the limitations imposed by the trial judge. Statements made to a Grand Jury are not confidential communications which come within the attorney-client privilege. McCormick, supra, Sections 93, 95; 8 Wigmore, Evidence, Section 2311. The modern justification of the privilege is that it encourages full disclosure by a client to his lawyer and thereby promotes the interests of justice.

8 Wigmore, supra, Section 2291; McCormick, supra, Section 91. This purpose is not furthered by restricting an attorney's access to and use of Grand Jury testimony by a former client.

 However, after examining the Grand Jury testimony by Ansell, which was sealed and made part of the record on appeal, and after comparing it with the trial testimony, we think that all the points in Ansell's Grand Jury testimony, which contradicted her trial testimony and which supported Rosenblum's defense, were adequately brought out at the trial. The testimony at the trial covered the following points which Rosenblum claims he was prevented from proving by the trial judge's rulings: (1) Rosenblum gave instructions that a special tax account be opened;[6] (2) Ansell had used the special tax account for purposes other than the payment of taxes;[7] and (3) Ansell had supplied Rosenblum with the figures for the tax returns.[8] Furthermore, Rosenblum's defense was assisted by the testimony of a Government witness that Ansell had stated to the witness that the entire fault was hers and that Rosenblum was not to blame for the filing of the false returns. Rosenblum's lawyer stressed this point again in his cross-examination of Miss Ansell. We are satisfied that the unrevealed portion of Ansell's Grand Jury testimony contained nothing which would have added weight to the impeachment of her

---

dication of such a requirement, we are loath so to interpret Remington so as to require this foundation. No other case in this circuit has imposed this additional requirement for the mere disclosure (as opposed to use as evidence) of contradictory Grand Jury or other privileged testimony. Of course, if defendant seeks to introduce the contradictory statements in evidence, he must lay a proper foundation. McCormick, Evidence (1954), Section 37.

In any event, in this case, the trial judge made it impossible for Rosenblum's attorney to lay the foundation apparently required by Remington, since he very clearly ruled that Rosenblum's attorney was to limit his cross-examination concerning Ansell's Grand Jury testimony to only the two matters touched upon by

the Government in its cross-examination of Ansell.

6. On direct examination by her attorney, Ansell testified that she thought Rosenblum had given instructions to open up a special tax account. On cross-examination, she testified that Rosenblum had never instructed her to open this account. Although her Grand Jury testimony would have tended to impeach this latter statement, we do not think that its exclusion by the trial judge was so prejudicial as to justify a new trial.

7. This was adequately brought out by the Government.

8. This was shown by the testimony of Government witnesses, and was brought out again on the cross-examination of Ansell by the Government and Block.

trial testimony touching Rosenblum, impeachment already accomplished by that portion of her Grand Jury testimony which was read to the trial jury at the Government's behest. Thus the effect of the rulings made was not to leave her trial testimony against Rosenblum unimpeached. When her trial testimony as to a particular fact had been impeached by one passage in her prior testimony, we think it lay within the trial court's discretion to prevent, as unduly time-consuming and unimportantly cumulative, an inspection of, and cross-examination on, other passages in her previous testimony given as to the same matters on the same occasion before the Grand Jury. Indeed, the verdict against Ansell imports that the jury rejected her trial testimony to the effect that Rosenblum was solely to blame. This accomplished, further impeachment of her trial testimony could scarcely have affected the verdict against Rosenblum.

Affirmed.