**UNITED STATES of America, Plaintiff-Appellee,**

v.

**August RASPOVICH and William Connors, Defendants-Appellants.**

**No. 242, Docket 24232.**

United States Court of Appeals Second Circuit.

Argued Feb. 5, 1957.

Decided March 12, 1957.

Paul W. Williams, U. S. Atty. for the Southern Dist. of New York, New York City (Herbert M. Wachtell, Asst. U. S. Atty., New York City, of counsel), for plaintiff-appellee.

Dreiband, Bleecker & Silberman, New York City (Alexander Dreiband and Gerald B. Bleecker, New York City, of counsel), for defendants-appellants.

Before CLARK, Chief Judge, MEDINA, Circuit Judge, and J. JOSEPH SMITH, District Judge.

MEDINA, Circuit Judge.

The indictment in this case, in addition to various substantive offenses, charges a conspiracy between appellants, Stanley King, Elliott Mifflin and one "Jane Doe," to obtain, forge and utter United States

Government checks which had been sent through the mail. The evidence revealed that these were checks for social security and old-age pension payments. Appellants were convicted of possession of stolen mail on Counts 1, 4, 7 and 10, of aiding and abetting in the forging and uttering of Government checks on Counts 2, 3, 5, 6, 8 and 9, and of conspiracy on Count 12; and they appeal. Count 11 was dismissed.

We shall discuss a single claim for reversal, as the other alleged errors are wholly without substance. During the cross-examination of the prosecution witness Stanley King, the witness admitted that when he first testified before the Grand Jury he had lied and had not mentioned the names of appellants Raspovich and Connors, two of the principal conspirators. The trial judge refused to permit counsel to examine the Grand Jury minutes. This the Government confesses was error, citing United States v. H. J. K. Theatre Corp., 2 Cir., 236 F.2d 502, decided subsequent to the trial of this case. Was this harmless error, within the meaning of 28 U.S.C. § 2111 and Rule 52(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.?

The scene of the principal activities of the members of this conspiracy to steal social security and old-age pension payment checks sent through the mail by the Government, and to forge and utter them and appropriate the proceeds, was 146 West 64th Street, in Manhattan, New York City. Some of the conversations took place on the stoop of this house, but the distribution of the checks and the division of the proceeds were effected in the room of a woman named Tommi Bellotti on the second floor. There was ample evidence to support findings by the jury that Raspovich and Connors were to procure the checks, that these were placed on top of a chest of drawers in Tommi's room, from which King and Mifflin selected the ones they thought they could cash, and that Mifflin was to supply the apparatus and know-how to make up "identification" cards, to be used at the check-cashing offices. One of the checks was to the order of Phoebe Lewis, so the conspirators enlisted the aid of a female dope addict who occupied a room on one of the upper floors.

After Mifflin and King, by ingenious means, obtained the necessary spurious "identification" cards, they sallied forth to cash the checks each had selected. King managed his operation successfully by forging and cashing a check to the order of Otto Wolf; and the woman whose aid they solicited was similarly successful, although she found it necessary to purchase some dresses which reduced the net cash for division, according to the allegedly over-generous formula of one half to the person procuring the check and one half to the one who cashed it.

Mifflin, however, aroused suspicion and he was arrested. King was next placed in custody. And the others enjoyed a brief respite of freedom. When King made his first statement to an Assistant United States Attorney, he knew the jig was up as to his own particular crime of forging and uttering the Otto Wolf check and so he pleaded guilty to this charge on September 15, 1955. Accordingly, when brought before the Grand Jury on September 16, 1955, he referred only to the fact that he had acceded to the importunity of Mifflin, described their obtaining of the "identification" cards, their starting out together to cash the checks, and his own cashing of the Otto Wolf check. By stipulation of the parties, the Grand Jury minutes of King's testimony on September 16, 1955, are before us; and the only part thereof that could possibly have been of assistance to defense counsel is King's failure to mention the names of Raspovich and Connors, and his self-serving declaration that he was going to hand over the entire proceeds of the Otto Wolf check to Mifflin.

But these discrepancies could have been of little avail to appellants Raspovich and Connors, as King admitted during the course of his cross-examination, not only that he lied to the Grand Jury but that he lied in concealing the names

of Raspovich and Connors, a matter repeatedly emphasized by defense counsel, who brought out a wealth of detail concerning the attendant circumstances. Thus King admitted that he talked to his lawyer before he changed his testimony, that he and Mifflin were together when they first informed the Assistant United States Attorney that Raspovich and Connors were seriously implicated.

The net result of all this is that we are convinced that the use of the Grand Jury minutes of King's testimony on September 16, 1955, could not have had any effect on King's credibility as a witness, as this had already been attacked *ad nauseam,* not only by what has been above related but by his admissions that he had been convicted of a great variety of crimes, including petit larceny, unlawful entry, assault in the third degree and possession of a hypodermic needle.

What must have convinced the jury beyond a reasonable doubt that appellants were guilty as charged, and what has produced in our minds a settled impression that the error lacks substance, is the overwhelming evidence of the various witnesses, which tallies perfectly with the exhibits and the attendant circumstances. United States v. Chieppa, 2 Cir., 241 F.2d 635. None of this proof was in any manner controverted by appellants.

It is worthy of comment that, when a later demand was made for the production of the minutes of further testimony given by King before the Grand Jury on November 29, 1955, the trial judge examined the testimony, found certain inconsistencies and discrepancies between King's testimony at the trial and his testimony before the Grand Jury on November 29, 1955, and these minutes were delivered to defense counsel who carefully read them and then decided not to cross-examine King further.

Accordingly, we conclude that this purely technical error by an able and experienced judge does not warrant a reversal of the judgments.

Affirmed.