**UNITED STATES of America**

v.

**CONSOLIDATED LAUNDRIES CORPORATION; Cascade Linen Supply Corp. of New Jersey; Central Coat, Apron & Linen Service, Inc.; General Linen Supply & Laundry Co., Inc.; Modern Silver Linen Supply Co., Inc. (a New York corporation); Modern Silver Linen Supply Co., Inc. (a New Jersey corporation); Standard Coat, Apron & Linen Service, Inc. (a New York corporation); Standard Coat, Apron & Linen Service, Inc. (a New Jersey corporation); Linen Supply Institute of Greater New York, Inc.; Linen Service Council of New Jersey; Louis Gordon; Harry Kessler; Charles Maslow; Jack Orlinsky; Fred S. Radnitz and Sam Spatt.**

United States District Court
S. D. New York.
March 10, 1958.

Richard B. O'Donnell, John D. Swartz, Richard Owen, Morris F. Klein, Bernard Wehrman, Paul D. Sapienza, New York City, and Ronald S. Daniells, Attys., Dept. of Justice, for the United States.

Jacob Landau, and Charles Schinitsky, New York City, for Consolidated Laundries Corp.

Edward J. O'Mara, Jersey City, N. J., (James A. Hession, Jersey City, N. J., and Benjamin Levine, New York City, of counsel), for Cascade Linen Supply Corp. of N. J.

Bauman, Epstein & Horowitz, New York City (Arnold Bauman and W. A. Newcomb, New York City, of counsel), for Central Coat, Apron & Linen Service, Inc. and Sam Spatt.

Cahill, Gordon, Reindel & Ohl, New York City (John F. Sonnett and Asa Sokolow, New York City, of counsel), for General Linen Supply & Laundry Co., Inc. and Fred S. Radnitz.

Halperin, Natanson, Shivitz, Scholer & Steingut, New York City (Harry J. Halperin, Samuel L. Scholer, and Theodore P. Halperin, New York City, of counsel), for Modern Silver Linen Supply Co., Inc. (a New York Corporation); Modern Silver Linen Supply Co., Inc. (a New Jersey Corporation); and Louis Gordon.

Laporte & Meyers, New York City (Ernest S. Meyers and Jules E. Yarnell, New York City, of counsel), for Standard Coat, Apron & Linen Service, Inc.,

(a New York Corporation) ; and Charles Maslow.

Edward J. O'Mara, Jersey City, N. J. (James A. Hession, Jersey City, N. J., of counsel), for Standard Coat, Apron & Linen Service, Inc., (a New Jersey Corporation) ; Linen Service Council of New Jersey; and Jack Orlinsky.

Myron P. Gordon, and Chester E. Kleinberg, New York City, for Linen Supply Institute of Greater New York, Inc., and Harry Kessler.

Mervin C. Pollak, and Norman M. Sheresky, New York City, of counsel for all defendants.

PALMIERI, District Judge.

This is a long and complex criminal anti-trust case in which the indictment is based upon alleged violations of the Sherman Anti-Trust Act, 26 Stat. 209 (1890), as amended, 15 U.S.C. §§ 1 and 2 (Supp. V). It is being tried before me without a jury.[1] I have considered it necessary to file this opinion because of repeated motions by defense counsel for full disclosure to them of Grand Jury testimony[2] of witnesses called by the Government, without prior scrutiny of the Grand Jury transcript by the Court.

I have declined to permit such disclosure, adhering in each instance to the rule of this Circuit as set forth in United States v. H. J. K. Theatre Corp., 2 Cir., 1956, 236 F.2d 502, certiorari denied sub nom. Rosenblum v. United States, 1957, 352 U.S. 969, 77 S.Ct. 359, 1 L.Ed.2d 323 and United States v. Alper, 2 Cir., 1946, 156 F.2d 222, which requires disclosure only of inconsistent statements after scrutiny of the Grand Jury testimony in camera by the Court.[3] Defense counsel have opposed such scrutiny by me although I have repeatedly offered to make it.[4] They have asserted their right to full and untrammelled disclosure at the conclusion of the witnesses' direct testimony, and nothing less.[5] They assert that this right is theirs under the Supreme Court's decision in Jencks v. United States, 1957, 353 U.S. 657, 77 S. Ct. 1007, 1 L.Ed.2d 1103.

1. The jury has been waived by all the defendants pursuant to Fed.R.Crim.P. 23 (a), 18 U.S.C.

2. Analogous questions have arisen with respect to prior statements of witnesses to Government investigators. I have disposed of them pursuant to the procedures set forth in the so-called Jencks statute, 18 U.S.C. § 3500 (Supp. V). See infra at pages 867 et seq.

3. I understand that two of my brethren have granted motions like those made by defense counsel in this case and have permitted full disclosure of prior Grand Jury testimony of Government witnesses without prior scrutiny by the Court. United States v. Palermo, C 152–189; United States v. Stromberg, et al., C 154–86. I also understand that a third Judge has granted full disclosure after inspection by the Court. United States v. Hoffa, C 153–18.

4. Some of the defendants oppose my examination of the Grand Jury transcript on the ground that, since I am also the trier of the facts in this case, they will be prejudiced by my reading statements that might not be admissible on the trial. I do not believe that defendants' exercise of their privilege to waive a trial by jury can operate to divest me of my power to rule upon questions of law which arise during the trial. Since I will file special findings at the end of the trial, Fed.R.Crim.P. 23(c), the way will be open, if need there be, to test whether my findings are based on competent evidence admitted during the course of the trial.

5. On one occasion, with respect to the witness Jontow when I considered it my duty to scrutinize his prior Grand Jury testimony because Government counsel succeeded in obtaining an adoption by the witness of part of it and read that part into the record, I offered all the related testimony to defense counsel for use on cross-examination. Cf. United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 231–237, 60 S.Ct. 811, 84 L.Ed. 1129. Counsel not only declined to use it, they declined even to inspect it. See Record, pp. 3180–90. The defendants have made it abundantly clear, therefore, that they want all of the witnesses' prior testimony without any prior scrutiny by the Court, or they want none of it. A similar ruling was made with respect to the witness Fischer. See Record pages 3209–10, 3302, 3372–4.

It is my view that such disclosure should not be granted in regard to Grand Jury minutes; that the scope of the Jencks decision does not extend to Grand Jury minutes; that the defendants are entitled only to the disclosure of inconsistent statements made before the Grand Jury; and that the Court must determine whether this inconsistency exists.

The right of defense counsel to inspect the Grand Jury testimony of a witness was not in issue in the Jencks case. The statements involved in that case were statements made before trial to agents of the Federal Bureau of Investigation. No questions were raised involving Grand Jury testimony nor was the matter discussed in the opinion of the Supreme Court.[6] The Jencks decision, essentially, is a re-examination and clarification of two procedural matters which arise in connection with the availability to the defense, for cross-examination purposes, of documents in the possession of the Government. The first of these is the requirement imposed by some courts that the defense preliminarily show that the documents contain statements inconsistent with the witnesses' testimony at the trial. The second is the practice of having the Court determine whether the documents are relevant and material to the cross-examination. The Jencks decision disapproves of both these practices.

In dealing with the latter practice, the Supreme Court cited and disapproved five cases decided by the Court of Appeals for the Second Circuit.[7] Two of them (Ebeling and Krulewitch) related solely to statements made by witnesses to the Federal Bureau of Investigation; two of them (Grayson and Beekman) related to records of the Securities and Exchange Commission and Office of Price Administration, respectively; while the fifth case (Cohen) concerned a demand for both testimony of a witness before a Federal Grand Jury and written statements given to the prosecutor, although it appears that the Circuit Court ruled only on the statements. If, the defense argument runs, the Jencks decision is meaningful as an expression of a rule of fairness in the administration of criminal justice in the federal courts, the Supreme Court must not be understood to have made one rule for prior statements made to Government agents and another rule for prior Grand Jury testimony. Thus, they contend, the path has been prepared for the untrammelled disclosure, which they seek, of all prior Grand Jury testimony. The argument is alluring. But I feel constrained to reject it.

In the absence of a clear and unequivocal statement to that effect, I cannot believe the Supreme Court intended its holding to apply to prior Grand Jury testimony. The inclusion of the Cohen case among the five Second Circuit decisions cited and disapproved is not, in my opinion, sufficient to attribute to the opinion in the Jencks case a meaning nowhere expressed. My belief that the Jencks decision was not intended to bear on disclosure of Grand Jury minutes is reinforced by the fact that the Court did not cite such Second Circuit cases as United States v. H. J. K. Theatre Corp., supra, and United States v. Alper, supra, when it expressed its disapproval of the practice of having the trial judge determine whether the document was relevant for cross-examination purposes. These

---

6. It is interesting to note that although the Supreme Court's decision resulted in a spate of comment in legal periodicals, not one of the notes discussed the decision in the sense of its possible application to prior Grand Jury testimony of a trial witness. See, e. g., 37 B.U.L.Rev. 512 (1957); 26 Ford.L.Rev. 593 (1957); 26 Geo.Wash.L.Rev. 106 (1957); 71 Harv.L.Rev. 112 (1957); 31 Temp.L.Q. 76 (1957); 35 U. of Det.L.Rev. 207 (1957); 106 U. of Pa.L.Rev. 110 (1957).

7. "See, e. g., United States v. Grayson, 166 F.2d 863, 869; United States v. Beekman, 155 F.2d 580, 584; United States v. Ebeling, 146 F.2d 254, 256; United States v. Cohen, 145 F.2d 82, 92; United States v. Krulewitch, 145 F.2d 76, 78, 156 A.L.R. 337." 353 U.S. 657, 669 note 15, 77 S.Ct. 1007, 1014.

cases dealt with Grand Jury minutes and it is reasonable to assume that, if the Court intended its ruling to apply to such minutes, it would have referred to these cases.

The Supreme Court, in Jencks, disapproved the requirement that a showing of inconsistency be made before the documents are turned over to the defense. It stated that the Fifth Circuit's reliance on Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447 for that proposition was "misplaced," and that the Gordon opinion had been "misinterpret[ed]." 353 U.S. 657, 666, 77 S.Ct. 1007, 1012. Turning to the Gordon opinion, then, it should be noted that that case dealt with the question of turning over to the defense prior statements of a witness made to the Government. Grand Jury minutes were not involved. In setting forth the problem which was before it in Gordon, the Court, at 344 U.S. 414, 418, 73 S.Ct. 369, 372, said:

> "Apparently, earlier common law did not permit the accused to require production of such documents. Some state jurisdictions still recognize no comprehensive right to see documents in the hands of the prosecution merely because they might aid in the preparation or presentation of the defense. We need not consider such broad doctrines in order to resolve this case, *which deals with a limited and definite category of documents to which the holdings of this opinion are likewise confined.*" (Footnotes omitted and emphasis added.)

What it comes down to, then, is this: The Supreme Court, in Jencks, handed down a decision which did not deal with Grand Jury minutes. The Jencks decision interpreted and explained a prior Supreme Court decision (Gordon) which was explicitly limited to statements made to Government investigators. The Jencks decision also disapproved a certain practice prevalent in this Circuit

and, in connection with this disapproval, cases were cited dealing with non-Grand Jury documents while the cases which did deal with Grand Jury minutes were not cited.[8] From this, defendants would have me conclude that the Supreme Court, in Jencks, established a rule of procedure to be followed in dealing with Grand Jury minutes.

An examination of other Supreme Court decisions indicates, however, that Grand Jury minutes are not to be dealt with in the same manner as other documents. The Supreme Court has, in the last twenty years, considered the extent to which Grand Jury minutes must be divulged by the Government. This was done in United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 231–237, 60 S.Ct. 811, 84 L.Ed. 1129; and United States v. Johnson, 1943, 319 U.S. 503, 512–513, 63 S.Ct. 1233, 87 L.Ed. 1546.

In the Socony-Vacuum case, the Government and trial judge had used Grand Jury minutes to refresh the recollection of certain witnesses. The trial judge had refused to permit inspection of the minutes by defense counsel. In holding that this was a matter within the sound discretion of the trial judge, the Court, at 310 U.S. 150, 233–234, 60 S.Ct. 811, 849, said that there was

> "no iron-clad rule [which] requires that opposing counsel be shown the grand jury transcript where it is not shown the witness and where some appropriate procedure is adopted to prevent its improper use. That again is a matter which rests in the sound discretion of the court. Grand jury testimony is ordinarily confidential. * * * But after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it. See Metzler v. United States, 9 Cir., 64 F.2d 203, 206. Since there is no inexorable rule which under all circumstances entitles the witness and his counsel to see the prior statement

---

8. Excepting, of course, the Cohen decision which perhaps can be said to have dealt with both.

made under oath and since in this case the court itself examined and thus directly controlled the use of the grand jury testimony, we cannot say that the refusal to make it available to counsel for the defense is per se reversible error."

It should be noted that in the Metzler case, which was cited by the Supreme Court, the Assistant United States Attorney had been permitted to read the defendants' confessions to the trial jury from the Grand Jury transcript and that the trial court then refused, and the Circuit Court approved its refusal, to turn over to defendants all of the testimony given before the Grand Jury.

In the Johnson case, the Seventh Circuit had ruled that the Government was required to answer the defendant's contention that the Grand Jury which had found the indictment was without power to investigate the crime for which the defendant was indicted. In rejecting this ruling, the Supreme Court said, at 319 U.S. 503, 513, 63 S.Ct. 1233, 1238:

"Were the ruling of the court below allowed to stand, the mere challenge, in effect, of the regularity of a grand jury's proceedings would cast upon the government the affirmative duty of proving such regularity. Nothing could be more destructive of the workings of our grand jury system or more hostile to its historic status. That institution, unlike the situation in many states, is part of the federal constitutional system. To allow the intrusion, implied by the lower court's attitude, into the indispensable secrecy of grand jury proceedings—as impor-

tant for the protection of the innocent as for the pursuit of the guilty—would subvert the functions of federal grand juries by all sorts of devices which some states have seen fit to permit in their local procedure, such as ready resort to inspection of grand jury minutes. The district court was quite within its right in striking the preliminary motions which challenged the legality of the grand jury that returned the indictment."

The fact that the Jencks opinion contains no reference either to United States v. Socony-Vacuum Oil Co., supra,[9] or United States v. Johnson, supra, is further evidence that the Court did not intend its ruling to extend to Grand Jury minutes. The Jencks decision disapproves the practice of having the trial judge determine the relevancy and materiality, for cross-examination purposes, of a statement made by a witness to a Government investigator. But that is no more an indication that defense counsel are to have access to Grand Jury minutes on the mere possibility that they contain prior inconsistent statements by the witness than it is an indication that defense counsel are to have access to the minutes upon a "mere challenge" to the power of the Grand Jury to find an indictment. United States v. Johnson, supra.

A distinction between the methods by which prior Grand Jury testimony and other statements of a witness are to be made available to defense counsel is not one of form only. It is rooted in sound policy and in a proper respect for the duties and function of the Grand

9. The Socony-Vacuum case was called to the attention of the Supreme Court in the Jencks briefs to support the Government's contention that disclosure of the documents at issue in Jencks was within the discretion of the trial judge. Brief of the United States in Opposition [to the Petition for a Writ of Certiorari] 16; Brief for the United States, 25, 39. It was cited in this connection, by Justice Burton in his concurring opinion. Jencks v. United States, 1957, 353 U.S. 657, 675, 77 S.Ct. 1007, 1 L.Ed.2d 1103. Neither Justice Burton nor the Government, in its Briefs, mentioned that Socony-Vacuum dealt with Grand Jury minutes, nor did the Briefs of either the petitioner or the Government, in Jencks, make any mention of Grand Jury minutes in discussing whether the witnesses' statements should have been made available to the defense in Jencks.

Jury in our system of criminal justice.[9a] The Grand Jury is a Constitutional instrument,[9b] adopted "as the sole method for preferring charges in serious criminal cases." Costello v. United States, 1956, 350 U.S. 359, 362, 76 S.Ct. 406, 408, 100 L.Ed. 397. The secrecy of its proceedings has been termed "indispensable" by the Supreme Court, United States v. Johnson, supra, at page 513 of 319 U.S., at page 1238 of 63 S.Ct. and has been recognized in Costello v. United States, supra, at page 362 of 350 U.S., at page 408 of 76 S.Ct. and in United States v. Socony-Vacuum Oil Co., supra, at page 233 of 310 U.S., at page 849 of 60 S.Ct. This secrecy is indeed indispensable if the Grand Jury is to remain a dispassionate forum, free from the pressures of publicity, censorship, and intimidation, "pledged to indict no one because of prejudice and to free no one because of special favor." Costello v. United States, supra, at page 362 of 350 U.S., at page 408 of 76 S.Ct. This secrecy is indispensable if the Grand Jury is to be assured that witnesses called to testify before it are testifying fully and freely, without fear that their testimony will expose them to unwanted publicity, obloquy or intimidation. This secrecy is indispensable if innocent persons, not indicted by the Grand Jury, are to be protected. United States v. Johnson, supra, at page 513 of 319 U.S., at page 1238 of 63 S.Ct.

While there is respectable authority to the contrary, 8 Wigmore, Evidence § 2362 (3d ed. 1940), the fact that a witness before the Grand Jury has testified at the trial does not overcome these reasons for protecting the secrecy of Grand Jury proceedings. The reasons are overcome when the testimony before the Grand Jury will be of aid in testing the testimony received at trial. But the only feasible method of striking a balance between these conflicting interests is to leave the determination of the relevance of the Grand Jury testimony as a cross-examination tool, initially in the hands of the trial judge. Nothing in the Jencks decision is to the contrary,[10] and the necessities of protecting Grand Jury proceedings, not present when other statements of a witness are at issue, are compelling reasons for treating with the

---

**9a.** The rule of secrecy was zealously enforced in early English law. Blackstone reports that "antiently it was held, that if one of the grand jury disclosed to any person indicted the evidence that appeared against him, he was thereby made accessory to the offence, if felony: and in treason a principal. And at this day it is agreed, that he is guilty of a high misprision, and liable to be fined and imprisoned." 4 Bl.Comm. *126 (citations omitted). Christian adds a footnote reporting a case in which the evidence of a witness before a Grand Jury was disclosed upon the witness' subsequent trial for perjury committed before the petit jury. "It was held that the object of this concealment was only to prevent the testimony produced before them from being contradicted by subornation of perjury on the part of the persons against whom bills were found. This is a privilege which may be waived by the crown." 4 Bl. Comm. 126, n. 5 (Christian ed. 1809). See In re Summerhayes, D.C.N.D.Cal. 1895, 70 F. 769 (Grand juror punished for contempt for revealing the proceedings of the Grand Jury). But see Atwell v. United States, 4 Cir., 1908, 162 F. 97 (Court held powerless, under Rev. Stat. § 725 (1875), to punish disclosure by a grand juror which had been made after his discharge from service as a grand juror).

**9b.** U.S.Const. Amend. V.

**10.** Further support for this view is found in the legislative history of 18 U.S.C. § 3500 (Supp. V). See Sen.Rep. No. 981, 85th Cong., 1st Sess. (1957), 1957 U.S.Code Cong. & Admin. News 1861, 1862, 1863, 1867–8. And see discussion infra at page 867 et seq. of 159 F.Supp.

Judge Learned Hand is also authority for the proposition that Grand Jury testimony and other privileged documents are to be treated differently. *Compare* his treatment of official reports in United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503, 506, quoted at length by the Supreme Court in Jencks, 353 U.S. 657, 671, 77 S.Ct. 1007, 1015, *with* his statement in United States v. Garsson, D.C. S.D.N.Y.1923, 291 F. 646, 649: "inspection of the grand jury's minutes * * * is said to lie in discretion, and perhaps it does, but no judge of this court has granted it, and I hope none ever will." See also Judge Hand's recent opinion in Doe v. Rosenberry, 2 Cir., 1958, —— F. 2d ——.

two categories of prior statements in different ways. Authoritative decisions, dealing with the scope of disclosure of Grand Jury minutes, United States v. Socony-Vacuum Oil Co., supra; United States v. Johnson, supra; United States v. H. J. K. Theatre Corp., supra; and United States v. Alper, supra, remain unimpaired by the Supreme Court's decision in Jencks.

■ There remains to be considered the effect upon this problem of the passage by Congress of 18 U.S.C. § 3500 (Supp. V). In the wake of the Jencks decision, a series of lower court decisions were handed down which, Congress believed, represented "misinterpretations and misunderstandings" of that decision. Sen.Rep.No. 981, 85th Cong., 1st Sess. (1957), 1957 U.S.Code Cong. & Admin. News 1861, 1863. Among these decisions was one by the Court of Appeals for the Third Circuit, United States v. Rosenberg, 3 Cir., 1957, 245 F.2d 870,[11] relied upon by the defendants here. In the Rosenberg decision, the Third Circuit held, in a short *per curiam* opinion, without explanation, that the Jencks decision required that Grand Jury testimony be turned over to the defense without prior scrutiny by the Court.[12] As indicated above, I am unable to agree with the Third Circuit's interpretation of Jencks. In any event, the definition of the term "statement" set forth in 18 U.S.C. § 3500(e) (Supp. V), and the legislative history of that statute, clearly indicate that Congress did not intend that Grand Jury testimony be turned over to defense counsel in the manner in which the Jencks decision directed that other statements be made available to defense counsel:

"In other words, it is the specific intent of the bill to provide for the production only of written statements previously made by a Government witness in the possession of the United States which are signed by him or otherwise adopted or approved by him, and any transcriptions or recordings of oral statements made by the witness to a Federal law officer, relating to the matter as to which the witness has testified. The Committee rejects, therefore, any interpretations of the Jencks decision which would provide for the production of entire investigative files, grand jury testimony, or similar materials." Sen.Rep.No. 981, 85th Cong., 1st Sess. (1957), 1957 U.S.Code Cong. & Admin. News 1861, 1862.

The statute provides that the trial judge shall, in certain circumstances "order the United States to produce any statement (as hereinafter defined)" for defense counsel's examination and use. 18 U.S.C. § 3500(b) (Supp. V). Any doubt that the definition of "statement" contained in subsection (e) was drawn in such a way as to exclude Grand Jury minutes from the "statements" to be so produced is resolved by reference to the legislative history quoted above.

11. "There was a case in the United States Court of Appeals for the Third Circuit in which the circuit judges on June 26, 1957, interpreted the opinion in the Jencks case as requiring a trial judge to permit counsel for the defendant to inspect at the trial the grand jury testimony of the witness as well as the statement of the witness to the FBI.

"A list of similar misinterpretations and misunderstandings is attached hereto as an appendix. * * *" Sen.Rep. No. 981, 85th Cong., 1st Sess. (1957), 1957 U.S.Code Cong. & Admin. News 1861, 1863. See also id. at 1867-8.

In quoting this passage I do not intend to subscribe to the characterization of the Third Circuit's decision which is contained in the Report. The passage is quoted only to indicate that, when 18 U.S.C. § 3500 (Supp. V) was enacted, Congress was aware that disclosure of Grand Jury testimony under the Jencks rule was a possibility, and resolved the question against such disclosure.

12. The Third Circuit stated that the Jencks decision disapproved of the practice established by United States v. Lebron, 2 Cir., 222 F.2d 531, certiorari denied 1955, 350 U.S. 876, 76 S.Ct. 121, 100 L. Ed. 774. The Lebron decision, however, involved reports made to the Federal Bureau of Investigation by a Government witness. 222 F.2d 531, 536-537.

■ The power of Congress to enact rules of procedure and evidence to be followed in the District Courts has long been established and recognized.[13] Wayman v. Southard, 1825, 10 Wheat. 1, 22, 6 L.Ed. 253; Tot v. United States, 1943, 319 U.S. 463, 467, 63 S.Ct. 1241, 87 L.Ed. 1519; Fed.R.Crim.P. 26. Indeed, in Gordon v. United States, supra, the Court specifically stated that questions as to the power of a defendant in a criminal case to require the production of documents at the trial for impeachment purposes are to be decided by the courts "[i]n the absence of specific legislation." 344 U.S. 414, 418, 73 S.Ct. 369, 372.

Congress having omitted Grand Jury minutes from the category of statements to be turned over to the defense without prior inspection by the trial judge,[14] and thus, in my view, having forbidden such a practice, it is my duty to refuse such disclosure unless, of course, the Constitution commands it. Cf. Tot v. United States, supra. I do not believe the Constitution so commands, nor has the Supreme Court held that it does.[15]

■ The fact that the statutory definition of "statements" contained in 18 U.S.C. § 3500(e) (Supp. V) does not include Grand Jury minutes, does not mean that such minutes may, in no circumstances, be turned over to defense counsel. It only means that they are not to be turned over in the manner prescribed by the statute or in the manner prescribed by the Jencks decision. To put the matter differently, disclosure of Grand Jury testimony is to be handled in accordance with the method established in the case law prior to Jencks. Essentially, the question is whether Congress may constitutionally decide that a determination of the relevancy of Grand Jury testimony for cross-examination purposes is to be made, in the first instance, by the trial judge. As indicated above, I believe that there are valid and sufficient reasons why Congress could make such a decision. I find nothing in Jencks which casts doubt on Congress' power, and I believe that the Gordon decision explicitly recognized it.[16]

In sum, I hold that the Supreme Court's decision in Jencks did not require that Grand Jury testimony be delivered to defense counsel, *in toto*, at the conclusion of the witnesses' direct testimony; that there are compelling reasons why the decision should not be extended to Grand Jury testimony; and that, in any event, Congress has validly legislated on the subject and left the rule of United States v. H. J. K. Theatre Corp., supra, and the practice developed under Fed. R.Crim.P. 6(e), in force.

13. The Senate Committee report shows that Congress acted with express awareness of the fact that the proposed legislation which resulted in 18 U.S.C. § 3500 (Supp. V) was "procedural in character." See Sen.Rep. No. 981, 85th Cong., 1st Sess. (1957), 1957 U.S.Code Cong. & Admin. News 1861, 1862.

14. The statute, of course, provides for court inspection of the documents upon a claim by the Government that a statement contains matter not related to the witness' testimony. 18 U.S.C. § 3500(c) (Supp. V). Under the rule defendants would have me adopt, the anomalous situation would arise in which statements made to the Government investigators would receive greater protection than Grand Jury testimony, in my view, a procedural enormity.

15. There is no indication that either the Jencks or the Gordon decisions rested on a Constitutional basis. See McNabb v. United States, 1943, 318 U.S. 332, 340–342, 63 S.Ct. 608, 613, 87 L.Ed. 819, on the power of the Supreme Court to establish and maintain "civilized standards of procedure and evidence" for the "administration of criminal justice in the federal courts," apart from the Constitution and in areas not governed by statute.

16. See supra at page 868 of 159 F.Supp. The constitutionality of 18 U.S.C. § 3500 (Supp. V) has been implicitly recognized by the Second Circuit in United States v. Miller, 2 Cir., 248 F.2d 163, certiorari denied 1957, 355 U.S. 905, 78 S.Ct. 332, 2 L.Ed.2d 261 in which the Court held that, upon remand, the procedure to be followed in producing documents would be that established by the statute. See also, United States v. Papworth, D.C.N.D.Tex.1957, 156 F.Supp. 842, 848–854.

Accordingly, I adhere to my rulings denying the motions. Defense counsel are not entitled to have the complete Grand Jury testimony of Government witnesses turned over to them for their possible use on cross-examination, without prior scrutiny by the Court.