**UNITED STATES of America,**
**Appellee,**

v.

**Leo SPANGELET, Appellant.**

**No. 390, Docket 25127.**

United States Court of Appeals
Second Circuit.

Argued June 13, 1958.

Decided Aug. 1, 1958.

Maurice Edelbaum, New York City (Chester E. Kleinberg, New York City, of counsel), for appellant.

George I. Gordon, Asst. U. S. Atty., for Southern District of New York, New York City (Arthur H. Christy, U. S. Atty., S. D. N. Y., New York City, on the brief, for appellee.

Before HINCKS and WATERMAN, Circuit Judges, and RYAN, District Judge.

HINCKS, Circuit Judge.

The defendant appeals after a conviction on counts of smuggling and conspiracy to smuggle.

The major point raised on appeal is the trial court's refusal to follow the procedure set forth in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103, when the defendant's counsel requested to see the grand jury testimony of the major government witness during that witness's cross-examination. The district judge held that neither Jencks nor the statute enacted by Congress immediately after the Jencks decision, 18 U.S.C.A. § 3500, authorized handing over grand jury testimony to defendant's counsel. The judge thereupon utilized the procedure which had prevailed before the Jencks case and inspected the grand jury testimony *in camera*. Finding no inconsistencies he then refused to give the transcript to the defense.

We hold that the district judge followed the proper procedure with respect to grand jury minutes. In reaching this conclusion, we accept the defendant's position that the government's case depended on the testimony of Gaudin and that the crux of the case was a credibility test between Gaudin and the defendant.[1]

---

1. Briefly, both Gaudin and the defendant were arrested in a hotel room in New York City. Gaudin testified that he had just given the smuggled diamonds to the defendant, who was leaving the room when the customs agents entered. The

But even the admitted importance of this potential instrument of impeachment cannot serve to change the present state of the law with regard to grand jury minutes. There is no doubt that prior to the Jencks case the procedure which the judge applied was proper. United States v. H. J. K. Theatre Corp., 2 Cir., 236 F.2d 502, certiorari denied sub nom. Rosenblum v. United States, 352 U.S. 969, 77 S.Ct. 359, 1 L.Ed.2d 323; United States v. Alper, 2 Cir., 156 F.2d 222. Later, in the now famous case of Jencks v. United States, supra, the Supreme Court, without mentioning grand jury minutes, held that a witness's statements made to government agents must be turned over to the defense for possible impeachment purposes if the government calls that witness to the stand. We do not think the Jencks opinion may be read to apply to grand jury minutes. But this is an academic problem and need not delay us because after the Jencks case and before the trial in this case Congress enacted 18 U.S.C.A. § 3500.

The legislative history of that section demonstrates that Congress does not intend that grand jury minutes should be made available under the Jencks procedure. Extracts from the Senate and Conference Reports will serve to make that clear. In Senate Report No. 981, 85th Cong. 1st Sess.,[2] it was stated:

. " * * * The committee rejects, therefore, any interpretations of the Jencks decision which would provide for the production of entire investigative files, grand jury testimony, or similar materials."

In the appendix to the Report the following appears:

"It should be noted that grand jury testimony is protected from disclosure by a Federal Rule of Criminal Procedure, 6(e), and it is within the discretion of the trial

judge to decide when grand jury testimony is to be revealed to the defense after a proper foundation is laid. Jencks makes no reference to this rule and such a disclosure was not mentioned directly or indirectly in the opinion."

The report of the House Conference conferees, Conference Report 1271, 85th Cong. 1st Sess., expressly states that the conferees agreed among other things to limit the types of statements covered in the bill to those of government witnesses "made to an agent of the Government."

If any further indication of Congressional intent is needed, it may be found in the Congressional comment on the case of United States v. Rosenberg, 3 Cir., 245 F.2d 870. This case was decided after the Jencks decision but before the enactment of § 3500: it held that under the Jencks case the defendant was entitled to the grand jury testimony of government witnesses without prior inspection by the court. This decision was brought to the attention of Congress and is referred to in the Senate Report as a "misinterpretation" of the Jencks case. Plainly, Congress intended that the section as finally passed should *not* enact the Rosenberg holding.

■ However, the defendant argues that the mandate in the Jencks case is a constitutional edict and that § 3500, if it narrows the holding of the Jencks decision in any regard, is unconstitutional. We cannot agree. As we read the Jencks case, its rule is an exercise by the Supreme Court of its supervisory power over the "administration of criminal justice in the federal courts." [353 U.S. 657, 77 S.Ct. 1013.] See McNabb v. United States, 318 U.S. 332, 340–342, 63 S.Ct. 608, 87 L.Ed. 819. We find no indication in Jencks that the standards it set forth were constitutionally required. It follows that once Congress has

---

defendant testified that he had gone to the room to pick up a leter from France concerning the condition of his son who was then sick in France.

2. The Congressional reports cited in this opinion are reprinted in 1957 U.S.Code Cong. & Adm.News, pp. 1861–1870.

entered the field its determination of proper federal criminal procedure is controlling. We conclude that § 3500 in that it fails to apply the Jencks procedure to grand jury minutes is not unconstitutional. For a sound and thorough discussion of the entire problem, see Judge Palmieri's opinion in United States v. Consolidated Laundries Corp., D.C., 159 F.Supp. 860.

■ However, merely because neither the Jencks rule nor § 3500 provide for the unrestricted availability of grand jury minutes, it does not follow that they may not be made available under the applicable procedure. In United States v. Procter & Gamble Co., 356 U.S. 677, 78 S.Ct. 983, 987, 2 L.Ed.2d 1077, the Court stated:

"We do not reach in this case problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.[7] Those are cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly."

Note 7 reads: "See, e.g., United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129. Cf. Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103."

We think the use of the words "discretely and limitedly" imports approval of the pre-Jencks rule which we have described above and indicates that some reason must be shown by the defendant to entitle him to inspect the minutes of the grand jury testimony of a government witness. However, it is now abundantly clear that a defendant's access to the grand jury minutes does not depend on a showing that the witness's testimony was inconsistent with that he gave before the grand jury. Comment in the Jencks opinion (353 U.S. at pages 666–670, 77 S.Ct. at pages 1012–1014) on Gordon v. United States, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447, makes this plain. We adhere to our holdings

in United States v. Angelet, 2 Cir., 255 F.2d 383.

■ We hold accordingly that the district judge properly inspected *in camera* the grand jury minutes of Gaudin's testimony to see whether it conflicted with his testimony given at the trial. And if no inconsistency had been shown, we agree that the proper procedure would have been that actually taken, namely, to deny the defendant access to the minutes and to order a copy thereof to be sealed and incorporated into the trial record for availability on appeal.

However, now that we read Gaudin's grand jury testimony against his extended testimony on trial we do find one inconsistency. Having told the grand jury that in the New York hotel room he saw the defendant open the package (containing the diamonds) which he had handed him and extract a letter, then occurred the following:

"Q. Did Jacques [the defendant's alias] read the letter in the room? A. No. He put it in his pocket and took everything."

And but a moment later the final question and answer in the grand jury examination was given as follows:

"Q. Can you recall whether or not Jacques read the letter in his room? A. I don't remember."

And at the trial in the course of a cross-examination extending for some sixty pages of the trial transcript the following occurred:

"Q. And did he open it up [the package] in your presence? A. Yes, he opened the package and he read the letter."

■ In ruling on defendant's request for inspection the trial judge said Gaudin's grand jury testimony was "a bare outline of" his testimony on trial. This was entirely accurate. But when he went on to say that all of his answers before the grand jury were consistent with what he has stated here, the Judge, not having, of course, a transcript of the freshly given testimony before him, apparently overlooked the inconsistency

carried in the above quotations as to whether the defendant had read the letter in the hotel room. This, we must hold, was error. Whether the error was harmless or reversible we need not decide since there is another ground which requires reversal. In passing the point, however, we suggest that a prosecutor, *who by opposing a defendant's access to grand jury minutes casts the burden of comparison upon the court, owes the court his own best effort himself to locate inconsistencies and the duty of calling to the attention of the court answers which might be classified as inconsistent.* For the prosecutor has had an opportunity to absorb the content of the grand jury minutes before trial and thus is in a better position than the judge to spot inconsistencies with the testimony on trial as it develops. We also observe that in this case this error would never have occurred if the prosecutor on request had provided the defense, as the judge suggested, with a copy of the witness's grand jury testimony.

We come now to the ground of appeal which is based on improper statements made by the prosecution during its summation. In considering this point it must be remembered that Gaudin's testimony was indispensable to the government's case: he testified to the conspiracy to smuggle diamonds as well as to the delivery of diamonds to the defendant upon two occasions. Indeed, in the charge, the trial judge observed that a direct conflict existed between Gaudin's and the defendant's testimony and that it was the jury's responsibility to believe one or the other.

In Gaudin's cross-examination, counsel for the defendant attempted to impeach his testimony by questions as to his interest in the matter and elicited an admission that his bail had been reduced from $50,000 to $1,000 after conference with the prosecutor. In his summation, defendant's counsel referred to this testimony, saying: " * * * the bail was $50,000, and like magic, as soon as he agreed to cooperate and he pleaded guilty, bang, the bail was reduced to $1,000. What a difference. Every motive for lying * * *." In reply, the Assistant United States Attorney then in charge of the prosecution in his summation, referring to this suggested inference, remarked: "What is your deduction? I assume the deduction was that I made a deal with Gaudin's lawyers. I have been in this office for two and a half years and I am going to leave shortly. I have never made a deal with anybody." On objection by defendant's counsel the trial judge held that the prosecutor was within the proper limits of advocacy, because he was replying to the charge by defendant's counsel that the bail reduction was a deal by the prosecutor for Gaudin's "cooperation." Upon further objection, the judge instructed the jury: "The only time a person testifies, ladies and gentlemen, is when he takes the stand and testifies from the witness stand. Mr. _____ [the prosecuting attorney] is not testifying. He is merely summing up and he is saying in an emphatic way that he made no promise to Gaudin and did not make a deal."

It is well settled that the jury's consideration in a case should be limited to those matters actually brought out in evidence and that summation should not be used to put before the jury facts not actually presented in evidence. This doctrine is especially important in criminal trials: the prosecutor represents "a sovereignty whose obligation is to govern impartially." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. As Berger suggests, this obligation may cause a jury to place more confidence in the word of a United States Attorney than in that of an ordinary member of the Bar. And it is especially inadmissible for the prosecutor to put into issue his own professional integrity, as was done here. See dissenting opinion in Henderson v. United States, 6 Cir., 218 F.2d 14, 22. In United States v. Pepe, 2 Cir., 247 F.2d 838, we held it improper for the prosecuting attorney himself to take the stand to impeach the

testimony of a witness. We think the prosecutor's conduct here was equally improper: in effect, he gave testimony as to a fact allegedly within his personal knowledge without taking an oath or subjecting himself to cross-examination. People v. Lovello, 1956, 1 N.Y.2d 436, 154 N.Y.S.2d 8, 136 N.E.2d 483.

The government cites in support of the prosecutor's action our decision in United States v. H. J. K. Theatre Corp., 2 Cir., 236 F.2d 502, certiorari denied sub nom. Rosenblum v. United States, 1957, 352 U.S. 969, 77 S.Ct. 359, 1 L.Ed. 2d 323. In that case, the summation which the defendant unsuccessfully invoked as ground for reversal was not that of the United States Attorney but that of counsel for a codefendant and was based upon testimony offered in evidence in the regular course of the trial which, we said, "amply justified his remarks." Here, however, in order to destroy an inference based on testimony elicited from the government's witness, which the defense quite properly had presented to the jury, the prosecutor made a statement of fact wholly without substantiation in the record. Nothing in the H. J. K. Theatre opinion justifies such a tactic. And in Christensen v. United States, 9 Cir., 16 F.2d 29, which the government also cites, the prosecutor's remark was in reply to an unsupported accusation by the defense that certain evidence had been fabricated by the prosecution. That was not the situation in this case where, as already noted, the defense had properly argued that facts in evidence provided ground for a sound inference in its favor.

Finally, the instruction of the trial court as to this point, as quoted above, was obviously insufficient to cure the error. It left with the government the advantage improperly obtained. It even gave the jury the impression that the defendant's counsel rather than the prosecution was being admonished. And since the point involved affected Gaudin's credibility upon which testimony the government's case depended, we cannot say that the error was harmless.

We need not consider the defendant's additional claim of error in the charge as the claimed error is not likely to recur on retrial.

Reversed and remanded.