**UNITED STATES of America,**
**Appellee,**

**v.**

**Mark ZBOROWSKI, Appellant.**

**No. 4, Docket 25490.**

United States Court of Appeals
Second Circuit.

Argued Oct. 6, 1959.

Decided Nov. 10, 1959.

---

2. United States ex rel. Westbrook v. Randolph, 7 Cir., 259 F.2d 215, 218.

Ernst and Norman S. Poser, New York City, on the brief), for appellant.

Herbert C. Kantor, Asst. U. S. Atty., Southern District of New York, New York City (S. Hazard Gillespie, Jr., U. S. Atty., George I. Gordon and Gideon Cashman, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before LUMBARD, WATERMAN and FRIENDLY, Circuit Judges.

LUMBARD, Circuit Judge.

Mark Zborowski, appealing from his conviction and five year sentence for perjury before a federal grand jury, in violation of 18 U.S.C. § 1621, claims three principal errors requiring reversal: first, that the proof failed to comply with the "two-witness rule" in perjury cases; second, that his testimony was not material to the grand jury investigation; and third, that it was error for the trial judge to refuse to examine and make available to the defendant the grand jury testimony of Jack Soble, the principal government witness. We disagree as to the appellant's first two contentions, but as we find that the trial judge erred in refusing to make available Soble's grand jury testimony, we reverse the conviction and remand the case for a new trial.

The grand jury before which Zborowski is alleged to have sworn falsely, was impaneled in the Southern District of New York in January 1957 and it proceeded to take evidence regarding espionage. Upon the occasion of Zborowski's second appearance before the grand jury on February 20, 1957, he gave testimony under oath which the government charges was perjurious. This testimony related to whether or not he had ever met Jack Soble. The questions and answers are as follows:

"Q. You have previously said that you never met Jack Soble? A. No. On the basis of the newspapers—

"Q. You have never met him. A. Not to my knowledge. Not that I remember.

\* \* \* \* \* \*

Frederic S. Nathan, New York City (Greenbaum, Wolff & Ernst, Morris L.

"Q. Well, if I were to tell you that Jack Soble has stated that he met you in the company of [t]his first contact, would that have any effect on your answer? A. I don't remember. I just don't remember a thing like that.

\* \* \* \* \* \*

"I am just telling you truthfully that I don't remember having met Jack Soble."

The indictment charged that Zborowski's testimony was false and that he knew it to be false "in that he knew and had met Jack Soble on various occasions in the years 1943, 1944, 1945, 1946, and 1947."

At the trial Zborowski admitted that he had met Jack Soble on five or six occasions in the years from 1943 through 1946 and that the purpose of his meetings with Soble was to convey to him for the eventual use of the Russian government information concerning the activities of the supporters of Trotsky doctrines in the United States.

The government's case concerned itself with showing in great detail the extent and nature of the Zborowski/Soble relationship, which Soble testified covered a series of meetings at intervals of a week or more for about two years from the spring of 1943 until 1945. Soble also said that the relationship continued on a social basis until sometime in 1947 or 1948. The government urged from these numerous meetings and the extent of the discussions which then took place that Zborowski knew very well who Soble was when he testified before the grand jury.

At trial three F.B.I. agents detailed about fifteen conferences that they had with Zborowski from December 1954 until he was called before the grand jury in February 1957. Zborowski admitted having misled the F.B.I. agents in December 1954 when he denied that he had ever been a Soviet agent. It was undisputed that Zborowski's first admission that he had known Soble came only after the F.B.I. confronted him with Soble on October 7, 1957. Zborowski finally said that he had known Soble as a Soviet agent and that he had passed information to him concerning Trotskyite organizations at five to six meetings. Up to this time he had told the F.B.I. that Chaliapin and Choundenko had been his only Soviet contacts; after the confrontation he said Soble succeeded Chaliapin and preceded Choundenko as his Soviet principal. Zborowski claimed at the trial that he had not known Soble under that name until he first read newspaper accounts about Soble's arrest in January 1957.

### The Two-Witness Perjury Rule Was Complied With

Appellant argues that the "two-witness" requirement in perjury cases has not been met. The two-witness rule requires " 'direct' proof of the crime by two witnesses who testify that the accused violated his oath, or 'direct' proof by one witness plus corroborating circumstances." United States v. Remington, 2 Cir., 1951, 191 F.2d 246, 249. We believe that the evidence presented complies with the second alternative method of satisfying the rule. Soble's testimony constituted the direct proof by one witness, and Zborowski's written admissions and trial testimony, coupled with the testimony of the government agents as to (1) the halting and belated nature of defendant's disclosures, and (2) the defendant's behavior upon confrontation with Soble, are sufficient corroborating evidence.

### The Testimony Was Material to the Grand Jury Investigation Into Espionage

We said in Carroll v. United States, 2 Cir., 16 F.2d 951, 953, certiorari denied 1927, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880: "A false statement by a witness \* \* \* though not relevant in an essential sense to the ultimate issues pending before the grand jury, may be material, in that it tends to influence or impede the course of the investigation. \* \* \* The test of materiality in a grand jury's investigation is whether

the false testimony has a natural effect or tendency to influence, impede, or dissuade the grand jury from pursuing its investigation, and, if it does, an indictment for perjury may be predicated upon it." Where the subject of the grand jury's investigation is espionage activities generally, all leads which the jury can obtain to identify those who have at any time been engaged therein are material. See Vetterli v. United States, 9 Cir., 198 F.2d 291, judgment vacated and case remanded for resentencing 1952, 344 U.S. 872, 73 S.Ct. 175, 97 L. Ed. 675. Zborowski's testimony was material to the grand jury investigation; his statement that he did not know Jack Soble had a tendency to dissuade the grand jury from making further inquiry into that phase of Zborowski's N.K.V.D. activities which he performed in conjunction with Soble.

### Soble's Grand Jury Testimony Should Have Been Disclosed to the Defendant

■ We find several important inconsistencies in Jack Soble's testimony before the grand jury, from which we conclude that his testimony should have been made available to the defendant.

The only witnesses to any of the alleged meetings between Zborowski and Soble were the two parties themselves. If the jury believed Soble's story of numerous and frequent meetings with lengthy discussions as to a multitude of matters besides the Trotskyite activities, then the jury might well believe that the government had proven beyond a reasonable doubt that Zborowski committed wilful perjury. On the other hand, if the jury belived Zborowski's story that there had been only five or six meetings from 1943 to 1946, eight years before his first questioning by the F.B.I., and over ten years before his alleged perjury, then they might well have a reasonable doubt whether Zborowski was truthfully

telling the grand jury what he remembered.

Thus the crucial witness in the case was Jack Soble, and anything bearing upon his memory of details and the time and manner in which they were recollected and reported was highly relevant.

■ For many years it has been the unvarying practice in this Circuit [1] to permit defense counsel to use inconsistent grand jury testimony for impeachment purposes. The rule is that when the defendant points out a possible inconsistency between the trial and the grand jury testimony of a government witness and requests the trial judge to examine the witness' grand jury minutes, the trial judge must then read the minutes *in camera.* Finding any substantial discrepancy, he must make available to the defendant the minutes or an intelligible segment thereof containing the inconsistency. But where the trial judge finds no such inconsistency, he should, upon request, seal the grand jury testimony so that it is available on appeal. United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338; United States v. Angelet, 2 Cir., 1958, 255 F.2d 383; United States v. H. J. K. Theatre Corp., 2 Cir., 1956, 236 F.2d 502, certiorari denied Rosenblum v. United States, 1957, 352 U.S. 969, 77 S.Ct. 359, 1 L.Ed.2d 323; United States v. Alper, 2 Cir., 1946, 156 F.2d 222.

In this case the trial judge was fully advised that there were inconsistencies between Soble's trial and grand jury testimony. Soble himself admitted that there were inconsistencies. He conceded that he had not told the grand jury about a meeting that he had had with Zborowski in the spring of 1944 regarding the possible defection from the Soviets of Victor Kravchenko. At the trial Soble testified in great detail about this meeting which he said took place around the corner from where he lived at 170th Street and Broadway. Furthermore, as

---

[1]. Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 and 18 U.S.C. § 3500 are inapplicable to

grand jury minutes. Pittsburgh Plate Glass Co. v. United States, 1959, 360 U. S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323.

defense counsel pointed out at trial, the government's bill of particulars, with respect to meetings between Zborowski and Soble in the years 1943 through 1947, failed to mention any such meeting or that any meeting had taken place near 170th Street.

Moreover, the government's bill of particulars, which could have been based only on information from Soble, differed from Soble's testimony in several other respects; first, regarding the place of the second meeting between Zborowski and Soble; second, the time of day, location and frequency of the meetings; and third, the final year of the meetings. In the bill of particulars it was stated that the meetings took place "at intervals of approximately two weeks or longer until the early months of 1945," while Soble's trial testimony was that some of the meetings were at weekly intervals. These discrepancies between the government's bill of particulars and Soble's trial testimony supported the defense claim that there might be inconsistencies between Soble's grand jury testimony and his trial testimony. Under these circumstances, the trial judge should have examined the grand jury minutes.

It is abundantly clear from the examination of the twenty-four pages of Soble's testimony before the grand jury that there are numerous inconsistencies between his trial and grand jury testimony which are relevant to the issues in the case. Indeed, the government concedes in its brief that there are at least five inconsistencies: (1) In his grand jury testimony Soble failed to make any mention of the meeting at 170th Street in the spring which he claims was attended by Zborowski, Chaliapin, Zubilin and himself. (2) Soble's grand jury testimony did not indicate that his second meeting with Zborowski occurred at a place different from that of their first

meeting. (3) Soble's grand jury testimony made no mention of any meetings or contacts with Zborowski in 1948. (4) Before the grand jury Soble testified that Chaliapin introduced Zborowski to him as "Etienne," whereas at the trial Soble stated that Zborowski was introduced as "Mark." (5) Before the grand jury Soble testified that he used to meet Zborowski "once in two weeks, once in a month." At the trial Soble testified that he used to meet him "weekly or every two weeks."

■ Even if there were no showing of possible inconsistency in the testimony of a witness in a perjury case, or indeed in any case, where the testimony of such witness is the only direct evidence against the defendant and no valid reason for secrecy exists, the court should upon request examine the grand jury minutes of such a witness for possible inconsistencies. United States v. Spangelet, supra. The reason for the necessity of such a rule is obvious. See Jencks v. United States, 1957, 353 U.S. 657, 667–668, 77 S.Ct. 1007, 1 L.Ed.2d 1103; Pittsburgh Plate Glass Co. v. United States, 1959, 360 U.S. 395, 407–410, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (dissenting opinion). Surely the defendant should have access to all conflicting testimony given under oath by the one direct witness who gives him the lie. It offends all sense of fairness to first require a showing of possible inconsistency preliminary to examination of the minutes by the trial judge.

■ The government argues that even if it was error for the trial judge not to make the grand jury minutes available to the defendant, that, in any event, this grand jury testimony would have been "unimportantly cumulative as an impeachment device." [2] We do not agree.

---

2. The government cites for this proposition United States v. H. J. K. Theatre Corp., 2 Cir., 1956, 236 F.2d 502 and Parr v. United States, 5 Cir., 1959, 265 F.2d 894. Neither of these cases support this contention. In H. J. K. Thea-

tre Corp. the court ruled that the defendant was entitled to have the contradictory grand jury testimony read into the record. In Parr the defendant made no request that the court examine the minutes *in camera*.

The government points out that Soble was subjected to intense and detailed cross-examination for nearly three days; that defense counsel had available for this purpose the reports of several doctors at both state and federal institutions including the complete medical treatment dossier maintained at the Medical Center for Federal Prisoners; that the defense had available numerous F.B.I. reports of interviews with Soble and Soble's reports and correspondence to his Soviet superiors which had been intercepted. The government further points out that the jury had before it considerable evidence on the basis of which it could have disbelieved Soble's trial testimony, such as evidence of his serious mental condition, his attempt to commit suicide by eating one and one-half pounds of nuts and bolts, the "unresponsive, disoriented, incoherent" nature of his testimony, his own plea of guilty in April 1957 to a charge of espionage, and Soble's admissions that he had lied to the F.B.I. over a long period of time regarding his activities and had made misstatements to other governmental authorities on numerous occasions.

Of course the fact that there was available to the defense a great mass of other data with which to impeach Soble can be no answer to the failure to produce the grand jury minutes if there were in those minutes any statements or omissions which were inconsistent with the witness' testimony at the trial.

Moreover, Soble's grand jury testimony by reason of the very fact that it was under oath and before a grand jury had about it a character and an importance far greater than any of the other impeaching evidence. Indeed when the central issue at stake is the memory of a defendant as to events which are over ten years old, what could be more important than to disclose to the trial jury similar lapses of memory on the part of the principal government witness when he was under oath and after he had given considerable thought over a long period of time to the matters under investigation. None of the other impeach-

ing data was nearly as important as the discrepancies between Soble's grand jury and trial testimony.

It is not for an appellate court to speculate how much difference the grand jury testimony might have made in the deliberations of the trial jury. Rosenberg v. United States, 1959, 360 U.S. 367, 371, 79 S.Ct. 1231, 3 L.Ed.2d 1304. No one can ever say in a particular case just what bit of evidence might turn the tide one way or the other. In every case where a jury has rendered a conviction and where other impeaching evidence is available, it could be argued that the grand jury evidence was merely cumulative. But of course the point of allowing free and full cross-examination of an important witness is to permit this very cumulation of evidence. So long as evidence of this nature is relevant it ought to be freely available to a defendant for whatever use he may wish to make of it.

█ We also think it appropriate to point out that the government should not have stood mute when the trial judge refused to read the minutes. We repeat and reemphasize what we said in August of 1958, just a few months before the trial of this case, in United States v. Spangelet, supra, 258 F.2d at page 342:

"[W]e suggest that a prosecutor, who by opposing a defendant's access to grand jury minutes casts the burden of comparison upon the court, owes the court his own best effort himself to locate inconsistencies and the duty of calling to the attention of the court answers which might be classified as inconsistent. For the prosecutor has had an opportunity to absorb the content of the grand jury minutes before trial and thus is in a better position than the judge to spot inconsistencies with the testimony on trial as it develops."

The Assistant United States Attorney must have known generally what was in the minutes and if he could not recollect all the details it would have taken

but a few minutes to refresh himself regarding the twenty-four pages of Soble's testimony. Reference to that testimony would have made apparent the discrepancies in the testimony which the government had listed in its brief. Indeed, with the knowledge of what was in the minutes it would have been appropriate for the government, with the court's consent, to turn over the minutes to the defendant as soon as the question was raised. There should have been no need for the defense to ask the trial judge to scrutinize the minutes. Here no useful purpose whatever could possibly be served by failure to disclose Soble's grand jury testimony as there was no longer any need for secrecy.[3]

 The prosecutor must be vigilant to see to it that full disclosure is made at trial of whatever may be in his possession which bears in any material degree on the charge for which a defendant is tried. In the long run it is more important that the government disclose the truth so that justice may be done than that some advantage might accrue to the prosecution toward ensuring a conviction. Berger v. United States, 1935, 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314.

 The requirement that the government must prove its case beyond a reasonable doubt means, at the very least, that the government itself should not, by any failure to disclose relevant evidence, prevent the defendant from producing evidence which might create the reasonable doubt. Our standards of fair play in federal criminal proceedings require that the government should present its evidence in its true colors and that it should never be a party to withholding any evidence which materially bears on the credibility of a witness it places on the stand. Thus it would seem to be better practice, and a saving of considerable time to all concerned, in cases such as this, where there are obvious discrepancies on material matters, for the government to make such grand jury minutes available to the defense at the end of the direct examination.

For these reasons we conclude that Zborowski's defense was substantially prejudiced by the failure to make available Soble's grand jury testimony.

 Appellant also complains that the government unduly interjected evidence of espionage although the charge was perjury, and that this prevented him from receiving a fair trial. Of course as the perjury had to do with defendant's espionage and his relations with others engaged in such activities, to some extent the subject could not be avoided. The trial testimony did go pretty far afield, and the trial was unduly lengthened because of the voluminous testimony about the cloak-and-dagger activities of Zborowski, Soble and others in Europe during the 1930's. However, this was as much the defendant's choosing as it was the government's. Defense counsel made little attempt to confine Soble's ramblings to what was relevant. It appears that the defense strategy was to let Soble talk at great length about everything, presumably in the hope of casting doubt on his sanity and motive. Indeed the defendant himself introduced much testimony dealing with espionage. Having embraced the course of opening wide the doors, the appellant will not be heard to complain when the result has proven adverse.

Reversed and remanded for a new trial.

---

3. None of the five reasons listed in United States v. Rose, 3 Cir., 1954, 215 F.2d 617, 628–629 for keeping grand jury minutes secret is present in this case.