**Ralph H. ALLEN, Appellant**

v.

**UNITED STATES of America, Appellee.**

**No. 14876.**

United States Court of Appeals District of Columbia Circuit.

Argued June 12, 1959.

Decided Dec. 3, 1959.

Mr. Ralph F. Berlow, Washington, D. C., for appellant.

Mr. Walter J. Bonner, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before EDGERTON, WILBUR K. MILLER and BAZELON, Circuit Judges.

PER CURIAM.

This is an appeal from a conviction for forging and uttering promissory notes. One of the grounds urged for reversal concerns the prosecutor's assertion, in his opening statement to the jury, that after appellant was arrested he "was advised of the charges against him and Detective Sgt. Ben Clark of the Metropolitan Police Department will testify to you, ladies and gentlemen, that upon advising the defendant of the charges against him, he refused to make any statement whatsoever concerning it."

The prosecutor never offered the promised evidence. The detective was not called to testify.

 Ordinarily, a prosecuting attorney's failure to prove an assertion he made in his opening statement is prejudicial to the Government, not the defendant. Nichamin v. United States, 6 Cir., 1920, 263 F. 880, 882; Williams v. United States, 1925, 55 App.D.C. 239, 241, 4 F.2d 432; United States v. Smith, 7 Cir., 1958, 253 F.2d 95, 98. Assuming, without deciding, that there can be instances in which an opening averment of a prosecutor, if unproved, may be so prejudicial to the defendant as to require reversal, we think there was no prejudice to the appellant here, for he chose to be a witness at his trial, and testified at length. The prosecutor's unsupported assertion that he refused to talk to the police was not startling and does not appear to have been emphasized. We think the possibility, if any, that it made so strong an impression on some jurors as to influence their votes three days later, despite Allen's intervening testimony, is too remote to require us to conclude that his substantial rights were affected.

Other reasons for reversal advanced by appellant have been considered and rejected.

Affirmed.

BAZELON, Circuit Judge (dissenting).

I think that appellant's objection to the prosecutor's promise in his opening statement, that he would prove that appellant "refused to make any statement whatsoever" to the arresting officer, is well taken, and requires reversal for a new trial.

The prosecutor never offered any such evidence. When the prosecutor concluded his opening statement, defense counsel moved for a mistrial. The motion was denied. The detective was never called to testify.

"It is well settled that the jury's consideration in a case should be limited to those matters actually brought out in evi-

dence and that summation should not be used to put before the jury facts not actually presented in evidence." United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338, 342. This rule applies to assertions of fact in opening, as well as in closing, argument; "counsel must not make assertions as to *facts of which evidence must have been introduced but has not been* or *will not be introduced.* \* \* Upon any matter, then, which ought to be evidenced in order to be properly considered at all by the jury, no honorable counsel will knowingly make an assertion in his argument, unless evidence about it has already been introduced or is pledged for future introduction." VI Wigmore, Evidence § 1807 (3d ed. 1940). The fear that the defendant will be unfairly prejudiced arises from the fact that to permit a lawyer "to be a witness without being subjected to cross-examination is to violate the fundamental principle of the Hearsay rule." (Id., § 1806.) This fear must be especially great where the offending remark is made by a United States Attorney, whose position as representative of the United States may lead "a jury to place more confidence in [his] word \* \* \* than in that of an ordinary member of the Bar." United States v. Spangelet, ibid. Accord, Stewart v. United States, 1957, 101 U.S.App.D.C. 51, 55–56, 247 F.2d 42, 46–47.

Not only guilty people but innocent ones, when they are arrested, sometimes refuse to talk to the police. This is always lawful and often wise. Yet failure to deny an accusation is often regarded as a suspicious circumstance and some-

times regarded as a confession of guilt. Accordingly I cannot say the prosecutor was mistaken in his evident belief that some prejudice against the defendant would result, and the jury would be more likely to convict him, if they were told at the outset that he refused to talk to the police. The tendency of first impressions to persist is well known.

It is possible that the prosecutor's subsequent failure to produce the promised testimony may have created some prejudice against him in the minds of some of the jurors. But that is immaterial. We cannot assume that either the prosecutor's failure or the defendant's testimony removed from the minds of all the jurors all the prejudice against the defendant that the prosecutor had caused by asserting that the defendant had refused to talk to the police. This assertion, which was never shown to be true,[1] may well have colored some juror's views of the acts for which the defendant was being tried and may well have influenced some of them to vote for conviction. I cannot say that the prosecutor's statement ceased to be prejudicial and did not affect the defendant's substantial rights.[2]

Moreover, in my opinion, evidence that the appellant refused to make any statement to the police would not have been admissible. In Kelley v. United States, 1956, 99 U.S.App.D.C. 13, 236 F.2d 746, this court barred evidence of a refusal to make any statements to the police after arrest where the accused said he was acting upon the advice of counsel. In the present case, the prosecutor did not indicate to the jury whether appellant rested

1. Since it was never shown to be true, Wigmore's analogy of "the rule for conditional relevancy" does not strengthen the Government's case but weakens it. Cf. VI Wigmore, Evidence § 1808 n. 1, § 1871.

2. The error was not cured by general instructions to the jury to decide the case solely on the basis of the evidence introduced. Indeed, it cannot even be assumed that the error could have been cured by specific instructions. "The virus \* \* \* implanted in the minds of the jury is not so easily extracted."

People v. Levan, 1945, 295 N.Y. 26, 64 N.E.2d 341, 346, quoted in United States v. Licht, 2 Cir., 1946, 158 F.2d 458, 462 (dissenting opinion of Judge Frank), certiorari denied 1947, 330 U.S. 824, 67 S.Ct. 863, 91 L.Ed. 1274. In fact, such an instruction would probably have served merely to underscore the matter which it sought to remove from the jury's consideration, and for this reason no significance can be attached to counsel's failure to request an instruction. See Ginsberg v. United States, 5 Cir., 1958, 257 F.2d 950, 955; VI Wigmore, op. cit. supra note 1, at § 1806, n. 1.

his refusal on the advice of counsel. But it would appear, from evidence introduced at trial, that this was the basis of his refusal.[3]

To limit the rule of exclusion to refusals on that basis would discriminate against persons who are unable to employ counsel. Regardless of the basis of the defendant's refusal, the testimony would have "constituted an attempt on the part of the Government to convict the appellant by his silence, by having the jury draw an inference of guilt from his refusal to explain, in violation of the spirit, if not the letter, of the Fifth Amendment." Helton v. United States, 5 Cir., 1955, 221 F.2d 338, 341. The prosecutor's declaration was such an attempt.

Appellant also complains that he was deprived of his right to a speedy trial. I agree.

Appellant was arrested on March 20, 1958, for an alleged forgery which occurred in June 1955. He was brought before the Commissioner on March 27, 1958, was held for action of the grand jury, and was allowed to remain on bond of $1500. He was indicted on May 5 and trial was set for June 11. It was continued to July 1 on the representation of defense counsel that he "had plans to leave the country." On June 30, the Government sought a three-week continuance for the purpose of obtaining a new indictment to include a related transaction which occurred in July 1954.[4] At the hearing on this motion for continuance, the court stated, "I am not going to press bail cases to trial in the summertime unless both counsel desire a trial, because we are going to give jail cases preference." Defense counsel objected to any continuance and pointed out to the court that his client, "as a result of this indictment, has been unable to secure employment." The court thereupon announced that it would grant a continuance. But instead of granting the three-week continuance requested by the Government, it postponed the case for more than three months to October 7.[5]

The policy of giving preference to jail cases is indeed a sound one. But it does not exclude reasonable efforts to accelerate the trial of a particular bail case when an impelling reason is shown. Defense counsel offered such a reason. Its validity was not challenged by either the Government or the court on the ground that defense counsel had already sought and obtained a continuance from June 11 to July 1, or for any other reason. In postponing the case from July 1 to October 7, the court acted solely on the ground that it "would not press bail cases to trial in the summertime *unless both counsel desire a trial.*" (Emphasis supplied.) Defense counsel wanted a trial immediately and Government counsel wanted a trial in three weeks. Neither one "desired" a trial in three months. But even if Government counsel had preferred, as a matter of mere convenience, to avoid a trial during the summer, this would

3. Testimony at trial revealed that before his arrest appellant had consulted a lawyer about the transactions involved in the case and, on one occasion, had declined to discuss the transactions with one of the complaining witnesses on the ground that the lawyer had advised him not to do so.

4. The Government should have been aware of this earlier transaction at the time it originally presented the case to the grand jury. In fact, Government counsel, in seeking the continuance, stated that the earlier transaction came to his attention "in reviewing this case jacket."

5. The court inquired into the vacation schedules of counsel. Government counsel stated that he planned to be on vacation the last two weeks in July and the last two weeks in August, while defense counsel stated that he had already had his vacation. After the court announced that bail cases would not be heard over the summer, defense counsel was asked if he had any preference for a date for trial and replied that he did not. This reply is hardly a waiver of counsel's earlier insistence on a speedy trial (because his client could not obtain employment with the charge pending) when it is viewed in the light of the court's flat pronouncement that bail cases would not be heard. Objection at that point was useless.

hardly have outweighed the prejudice to appellant because of his asserted inability to obtain employment. Clearly in these circumstances he was entitled to obtain such a trial unless it was precluded by the exigencies of the summer calendar. That it was not so precluded appears from the District Court records which reveal that of the 23 criminal cases tried during the month of August 1958, *6 were bail cases.*[6]

The fact that appellant's counsel later obtained a continuance on October 7, "to locate witnesses," does not wipe the slate clean. Appellant had already been entitled to dismissal by reason of the earlier denial of his asserted right to a speedy trial.

---

6. We are advised informally that under the practice adopted by the court several months earlier bail cases which had been postponed were scheduled for trial in the summer if attorneys and witnesses were available.