Bernard A. JOHNSON, Appellant

v.

UNITED STATES of America, Appellee.

No. 15343.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 16, 1959.

Decided March 10, 1960.

Mr. William P. Bernton, Washington, D. C., (appointed by this court) for appellant.

Mr. Donald S. Smith, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

1. These articles were not introduced as exhibits.

Before Mr. Justice BURTON, retired,[*] and EDGERTON and BURGER, Circuit Judges.

BURGER, Circuit Judge.

We granted an appeal at government expense to review appellant's conviction for robbery under D.C.Code § 22–2901 (1951). A co-defendant, Calvin Johnson, did not appeal.

The evidence in the case is singular in several respects; first there were eyewitnesses who came on the scene as the assault on the victim was taking place; secondly the witnesses were police officers who immediately apprehended two of the three assailants, one of them the appellant. Hence no problem of identification of appellant exists.

Two police officers testified they were cruising in the 500 block of 4th Street, S. W. at about midnight when their headlights fell on two men engaged in holding another on the sidewalk while a third was going through the pockets of the victim. As the police car turned into the scene, one attacker, who had been rifling the victim's pockets, fled and was not apprehended. Police picked up the other two; one of them, Calvin Johnson, was convicted along with appellant but did not appeal.

Police found the victim, James Davis, unconscious and bleeding. On recovering he said he had been walking down the street and on turning to see who was approaching him he was struck down and knocked unconscious. He was bleeding from wounds about his mouth. He could not identify the attackers. Later at the police station Davis told police he had been robbed of $39.

Appellant and Calvin Johnson at the scene told officers they were simply walking down the street when they discovered Davis lying prone on the sidewalk and stopped because they were "just curious to see why he was there." Calvin Johnson's knuckles had a fresh cut which he said he had suffered by hitting them on a lamppost.

Appellant and his companion were taken to the police station, searched and booked on a charge of investigation of robbery. No money was found on them. About an hour after their detention, appellant and Calvin Johnson gave a different account of the events. According to this second version they were walking behind Davis when the latter suddenly turned on them belligerently, asking "What are you following me for." Davis then advanced on them threateningly but suddenly fell to the ground, injuring his mouth. Appellant and Calvin Johnson said no other person was present.

At trial still a third version of events was given by the appellant. In this version appellant said Davis came up *behind them* and bumped *them* and began an argument, struck at appellant and fell to the sidewalk as he did so. Appellant said they were simply departing to avoid trouble when the police came.

The testimony of the police is in direct conflict with all versions of the events given by appellant and his co-defendant. The disputed issues of fact were submitted to the jury under proper instructions and a verdict of guilty was returned. Each of the co-defendants was sentenced 2 to 6 years.

 The issues raised on this appeal as now disclosed by the full record before us are so insubstantial as not to warrant extended discussion. Only two need be mentioned. The admission of appellant's statement to police at the precinct station about an hour after being booked is assigned as error under Rule 5(a), Fed.R.Crim.P., 18 U.S.C. However, no objection was made by the defense when these statements were offered. Gilliam v. United States, 1958, 103 U.S.App.D.C. 181, 257 F.2d 185, certiorari denied 1959, 359 U.S. 947, 79 S.Ct. 728, 3 L.Ed.2d 680. They were merely statements by which appellant and his co-defendant sought to exculpate themselves and indeed were utilized by appellant to try to make out a theory of "self-defense." They were so similar to other

---

[*] Sitting by designation pursuant to Sec. 294(a), Title 28 U.S.C.

statements relied upon by appellant that, in any event, their admission did not amount to prejudicial error, if arguendo, it was error.

Another assigned error is the prosecution's closing argument in which the government characterized the defense in the following terms:

"In other words, these two men [defendants] thought they were in danger of serious bodily harm, and for that reason they struck and knocked this man down * * * and walked away and left him there."

Appellant immediately objected, pointing out that no one testified to witnessing an actual blow struck in self-defense. The court sustained the objection and ordered the statements stricken. The prosecutor then disclaimed to the jury any intent to mislead, claiming he was merely

"relying on the logical inference in the case. They [defendants] did not make a statement that they struck this man in self-defense or they were in fear of bodily harm, and I did not intend to convey that to you, ladies and gentlemen. It was only inference I was trying to say could be drawn therefrom. But I think the testimony is that they struck the man. He did fall to the street, and they left him there."

No further objection was taken by defense counsel.

■ These latter statements to which no objection was made do not amount to reversible error. Moreover, the prosecutor's language was plainly nothing more than an expression of his opinion about the content of the evidence, "But *I think* the testimony is * * *." (Emphasis added.) The record as a whole fully warrants a conclusion that *some* person or persons "struck the man" knocked him down and *some* persons, namely the co-defendants, held him while the unidentified elusive confederate rifled the victim's pockets. It was in this latter posture that appellant and his co-defendant were seen by the police officers

under their headlights only seconds before they were apprehended; and as we noted, when apprehended, one of the co-defendants was found to have a fresh cut on his knuckles and the victim bleeding from fresh cuts about his mouth.

Other assigned errors are too insubstantial to warrant comment; some were not made the subject of timely objections and are not of a character to warrant review as "plain error" under Rule 52 (b), Fed.R.Crim.P.

Affirmed.

EDGERTON, Circuit Judge (dissenting).

Two police detectives cruising in a squad car, at night, saw one Davis lying on a sidewalk. One of the detectives testified that appellant, a co-defendant, and a third man who ran away and was not apprehended, were "standing over" Davis; that the defendants were "holding the man by his shoulder"; and that the third man was "going through [Davis's] pockets." The other detective, who was on the side of the car nearest the scene, saw that the defendants "were over the man", "were bent down over him", but "couldn't say what they were doing."

The defendants were arrested walking away from the scene. Neither had the money Davis missed.

The opinion of the court describes the officers as "eyewitnesses who came on the scene as the assault on the victim was taking place" and "immediately apprehended two of the three assailants." But neither officer, and no other witness, saw the appellant or anyone else strike Davis. Davis himself was unable to identify anyone as having struck him.

In his closing argument, the prosecutor made these statements regarding the testimony: "Officer Wesley said that they [the defendants] said they found a man lying on the street, found him lying on the street. They later changed that story to say the man turned around and asked him [sic] why was he following him, and reached in his pocket and

it's the old story about they thought the man was going to strike them. In other words, *these two men thought they were in danger of serious bodily harm, and for that reason they struck and knocked this man down* on the street and walked away and left him there." (Emphasis added.)

Defense counsel then said: "I am going to ask that that statement be stricken because there was no testimony, as I recall, that Davis was struck in self-defense." This colloquy followed: "The Court: Will you read Mr. Blackwell's statement. (The statement in question was read by the reporter.) Mr. Ochipinti: I don't remember any such testimony they made to the officers. The Court: I will sustain your objection. The statement will be stricken."

But the prosecutor did not let the matter drop. He went on: "Well, ladies and gentlemen, it wasn't my desire to mislead you that these defendants made any such statement. I was just only relying on the logical inference in the case. They did not make a statement that they struck this man in self-defense or they were in fear of bodily harm, and I did not intend to convey that to you, ladies and gentlemen. It was only inference I was trying to say could be drawn therefrom. *But I think the testimony is that they struck the man.*" (Emphasis added.) Thus the prosecutor told the jury that "self-defense" was "only inference" but that "they struck the man" was "testimony".

I have pointed out that there was no such testimony.

The accusatory and prejudicial part of the statement which the prosecutor had previously made, and which had been stricken on counsel's objection, was to the effect that the defendants said "they struck and knocked this man down * * *." The purported explanation, self-defense, which the prosecutor attributed to them, was not accusatory or prejudicial; on the contrary, it was exculpatory. No one could possibly have imagined that defense counsel's objection was aimed, and aimed exclusively, at the

exculpatory part of the prosecutor's statement. It was obviously aimed at the accusatory and prejudicial part. The prosecutor proceeded to repeat that part in other words. The "testimony", he said, "is that they struck the man." Defense counsel's objection, which he had just made, applied alike to the first form of the prosecutor's statement and to the second. It was therefore unnecessary for counsel to repeat his objection. We need not invoke F.R.Crim.P. Rule 52(b), which provides that "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

If anything had made it certain that the defendants struck the man, the prosecutor's misstatement "the testimony is that they struck the man" might, perhaps, have been harmless. But it was by no means certain that the defendants struck the man, and the prosecutor's misstatement was by no means harmless. The evidence left it completely uncertain who, if anyone, had struck Davis. We cannot assume that no juror believed what the prosecutor said, or that no juror's vote was affected by this belief.

The case was by no means open and shut. The events happened at night. Particularly since the officer who had the best opportunity to see what the defendants were doing "couldn't say what they were doing", a jury might have a reasonable doubt whether they were holding the man or merely looking at him. It was indispensable to the prosecution's case that the jury be led to believe the testimony of the only witness who said the defendants were holding the man, for there was no other strong evidence that they robbed him. Obviously the jury was more likely to believe the defendants held him if it believed they previously struck him. The prosecutor's misstatement, made in closing argument, may well have left the jury with the exceedingly damaging and wholly erroneous impression that a witness had seen the defendants strike Davis. In my opinion this made "prejudice to the cause of the

accused * * * so highly probable that [the court] is not justified in assuming its non-existence." Berger v. United States, 295 U.S. 78, 89, 55 S.Ct. 629, 79 L.Ed. 1314.

"It is well settled that the jury's consideration in a case should be limited to those matters actually brought out in evidence and that summation should not be used to put before the jury facts not actually presented in evidence. This doctrine is especially important in criminal trials: the prosecutor represents 'a sovereignty whose obligation is to govern impartially.' Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314. As [that case] suggests, this obligation may cause a jury to place more confidence in the word of a United States Attorney than in that of an ordinary member of the Bar." United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338, 342. Cf. Stewart v. United States, 101 U.S.App.D.C. 51, 55–56, 247 F.2d 42, 46–47.

This case is unlike Allen v. United States, 106 U.S.App.D.C. 350, 273 F.2d 85, where the prosecutor's statement about testimony was only a prediction made in his opening argument and, moreover, concerned a relatively minor matter.

I think we should reverse the conviction.