UNITED STATES of America,
Appellee,

v.

David GIAMPA, Appellant.

No. 178, Docket 26295.

United States Court of Appeals
Second Circuit.

Argued Nov. 14, 1960.

Decided Feb. 3, 1961.

84

George J. Todaro, New York City (Sylvester Cosentino, New York City, on the brief), for appellant.

Paul J. Curran, Asst. U. S. Atty., New York City (S. Hazard Gillespie, Jr., U. S. Atty. for Southern District of New York, David R. Hyde, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before LUMBARD, Chief Judge, and WATERMAN and MOORE, Circuit Judges.

LEONARD P. MOORE, Circuit Judge.

Defendant, David Giampa, was indicted for harboring and concealing Nicholas Tolentino, a Federal fugitive (18 U.S.C. § 1071). From a judgment of conviction after a trial without a jury, defendant appeals.

The primary error asserted is that the Government failed to establish beyond a reasonable doubt that defendant knew that a warrant or process had been issued for Tolentino's arrest.

After hearing the proof, the trial judge concluded, "I entertain not the slightest doubt of his guilt, let alone a reasonable doubt, none whatsoever." There was no proof that defendant was shown the warrant for Tolentino's arrest or that he was specifically told that Tolentino was a fugitive from justice. Rare would be the case in which such direct proof would be available. The facts developed upon the trial, however, firmly support the judge's emphatic conclusion.

In October, 1958, Tolentino, a family friend, asked defendant to help him in locating an apartment. Defendant did so to the extent of signing (using his own name "David Giampa"), a lease for him and having a telephone installed in the same name. This may have been a generous gesture towards a family friend but why did Tolentino assume the name "James Gianpa" and defendant use this false name for him in dealing with the apartment landlord? If Giampa thought Tolentino were altogether free to appear in public at will, why was it necessary for defendant to shop for and carry groceries to Tolentino's place of abode several times a week? And finally although it might be characterized as a crowning act of friendship, defendant's action in attempting to bar federal narcotics agents from entering the Tolentino (Gianpa) apartment with a simultaneous friendly warning, "Run, Nick. It's the Feds.," scarcely commends itself to being, as defendant's counsel argues, "as consistent with innocence as with guilt" or merely carrying "his good will too far for a friend." In summary, there was ade-

quate proof from which the court could properly infer knowledge and guilt beyond a reasonable doubt.

Error is also attributed to the court's failure to inspect the Grand Jury minutes of the testimony of a government narcotics agent. While the agent was on the stand, the court after a proper foundation had been laid examined and ruled upon certain reports made by the agent, production of which had been requested. Defense counsel then asked that the court look at the Grand Jury minutes. The court ruled, "Motion denied. Jencks doesn't apply to grand jury minutes" (Pittsburgh Plate Glass v. United States, 1959, 360 U.S. 395, 398, 79 S.Ct. 1237, 3 L.Ed.2d 1323), adding later, however, that this ruling did not foreclose examination if a proper foundation were established. When the agent was subsequently recalled merely to identify a document, defense counsel argued that he was entitled to see the minutes.

The law as to the production and examination of Grand Jury minutes has been considered and made the subject for discussion in a number of recent cases in this circuit on appeals from jury trials (United States v. Hernandez, 2 Cir., 1960, 282 F.2d 71; United States v. McKeever, 2 Cir., 1960, 271 F.2d 669; United States v. Zborowski, 2 Cir., 1959, 271 F.2d 661; United States v. Spangelet, 2 Cir., 1958, 258 F.2d 338; see also Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103; 18 U.S.C.A. § 3500) and in two other cases, like this one, where the case was heard below by the court sitting without a jury (United States v. Kirby, 2 Cir., 1960, 273 F.2d 956, and United States v. Santore et al., 2 Cir., 1959, 51 F.2d 290.

■ To avoid uncertainty in the future upon trials wherein this problem arises, certain fundamental principles should be observed. If the Government calls a witness who has given testimony before a Grand Jury, it is under a duty to have the transcript of such testimony available upon the trial. If it is then established at the trial that the witness has testified before the Grand Jury and defense counsel requests that the trial court examine the minutes for inconsistencies in testimony given upon the trial and before the Grand Jury, the trial court should read the minutes and if inconsistencies be found should make such portions of the minutes available to defense counsel. If defense counsel calls a witness who has testified before a Grand Jury and believes that the minutes may be necessary upon the trial, appropriate arrangements should be made for their availability upon the trial in the event that counsel may ask for examination by the trial judge.

■ In the past, claims have been made that inconsistencies first must be established (the so-called proper foundation) before a court examination of the minutes may be called for. This approach is quite unrealistic and would defeat the very purpose of the inspection. How can court or counsel know whether there is inconsistency or not unless the minutes are first read?

The practice set forth herein is simple, direct and best calculated to secure for the parties their rights to test the credibility of the witness before court or jury.

However, in this case there are differences of opinion in the court as to the facts and as to the procedure which should have been followed. Although they do not affect the ultimate result, they should be stated.

■ Chief Judge Lumbard and Judge Waterman believe that the record sufficiently discloses a request to the trial judge to read the minutes and that, therefore, it was error for him to fail to do so. Chief Judge Lumbard believes that the error was not prejudicial because the examination of the minutes (by each member of this panel) discloses that there were no inconsistencies and that defense counsel would not have been entitled to the minutes in any event. For this point of view, he relies upon United States v. Kirby, supra. Judge

Waterman would direct the trial judge to read the minutes and certify whether inconsistencies exist in the trial judge's opinion. In the event that the certificate indicated no inconsistencies, he would affirm. If the trial judge certified otherwise, he would remand for a new trial. For such procedure, Judge Waterman relies upon that adopted in United States v. Santore et al., 2 Cir., 1959, supra. Although Chief Judge Lumbard and the author of this opinion consider this procedure unnecessary, in deference to Judge Waterman's position we have submitted the transcript of the grand jury testimony to the trial judge below, and he has certified as follows:

"The undersigned, in compliance with the request of the Court of Appeals for the Second Circuit in its order of January 30, 1961, certifies that there are no inconsistencies in the testimony of Martin Pera, the only witness who testified both in the trial of defendant and before the grand jury, sufficient to have warranted discovering to defendant's counsel the grand jury testimony of said Martin Pera."

In my opinion, the trial record does not disclose a request to read the minutes sufficiently clear or specific so that the trial judge can fairly be taxed with error for failing to do so. The remedial procedure suggested in Kirby and Santore should not be necessary in the future, if the practice suggested in this opinion is followed by the trial judges. For this reason, I think it is unnecessary to place a stamp of approval on either practice. Of course, if no inconsistencies are found and there are no reversible errors, the case should not be remanded because of failure to read the minutes. However, the decision as to whether the minutes should be made available to trial counsel can best be made at the time by the trial judge in the light of all the circumstances presented during the trial. The trial judge sees the witnesses, observes their manner of answering questions, and should be accorded discretion in determining the methods which the respective counsel seek to use in testing witness credibility.

The judgment of conviction is affirmed.